Jorge Ornelas, #P-37370
Avenal State Prison
P.O. Box 900-F650-22-5-Up
Avenal, Ca. 93204

Plaintiff (lead)

**FILED**

APR 0 6 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ORNELAS; MARIO GONZALES; ANTHONY BRAY; VICENT ALVAREZ; & LEONEL GUZMAN, <br><br>      Plaintiffs, and <br>     Similarly Situated <br>     ASP Prisoners, <br><br> vs. <br><br> KATHLEEN DICKINSON, Associate Director (A); California Dept of Corrections & Rehabiltation; JAMES D. HARTLEY, Warden Avenal State Prison; Ron Davis, Chief Deputy Warden ASP; Warden's Advisory Group ('WAG') ASP; Captain BIAGGINI, Fac.6 ASP; L. LOPEZ, Appeals Coordinator ASP; Sergeant KRAMER, Fac.6 ASP; Sergeant Riddle, Fac.6 ASP; Officer J. ROBLES, F650 ASP; and Officer Hein, F650 ASP, <br><br>      Defendants, <br>     Individually and in <br>     their official <br>     capacity. | Case No 1:12-CV 0 0 4 9 9 ___ MJS PC <br><br> COMPLAINT, Civil Rights Act <br> 42 U.S.C. §1983, §1985, §1997(e); <br> Injunctive Relief and Declaratory <br> Relief <br><br> DEMAND FOR TRIAL |

**RECEIVED**

APR 0 6 2012

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## Introduction

This is a civil rights complaint filed by State prisoners housed

at Avenal State Prison, Kings COunty, alleging that an Associate Director

of Corrections, in concert with the prison Warden and his subordinates,

created a Policy and enforced it which intentionally and deliberately

caused and resulted in acts of violence; that these incidents could have been, but were not avoided when prison officials orchestrated incidents 'likely to result in violence' with galiator-styled fights, placement of false and inaccurate information in a selected prisoners central files, and their removal from opportunity to program and earn early release, or even timely release.  These officials then orchestrated and impeded these prisoners efforts to appeal this through prison appeal channels, in order to thwart and hinder their ability to seek judicial redress, where they have no plain, ordinary nor adequate remedy to redress the deprivations and denial of the civil and constitutional rights, as alleged.

1.   **Previous Lawsuits:**

    A.   **Have you brought any other lawsuits while a prisoner?**

        Yes ___x___          No ___·___

    B.   If your answer to A is yes, how many?   ___(1.)___
        Describe previous or pending lawsuits below, if any.

        JORGE ALBERTO ORNELAS v. MATTHEW CATE, et. al.
        (Caes no: 1:10-CV-02366-AWI-GBC) case is still pending.

II.   **Exhaustion of Administrative Remedies**

    A.   Is there an inmate appeal or administrative remedy process available at your institution?

        Yes  XX          No _____

    B.   Have you filed an appeal or grievance concerning ALL of the facts contained in this complaint?

        Yes  XX          No _____

    C.   Is this process completed ?

        Yes.   The appeal were logged as a GROUP Appeal, & Appeals Coordinator later changed the designation to a staff complaint at request of Captain, at behest of Warden & his staff to thwart & hinder & impede Group of inmates from challenging deprivation of their rights.  Specifc facts are presented in Complaint as to what happened during the appeal process, which is one of the Causes of action.  The Appeal is attached as Exh "D", 1-12.

2

III.                          Parties To Suit

Plaintiff **JORGE ORNELAS**, prison #P-37370, was and remained confined at Avenal State Prison, P.O. Box 900-F650-22-5-Up, Avenal, California, 93204, at all times mentioned in this complaint, and he is responsible for preparing and filing the DCD 602 GROUP appeal on behalf of the 50 odd prisoners who signed; he appears as lead Plaintiff.

Co-Plaintiff **MARIO GONZALES**, prison #F-94826, was and remains confined at Avenal State Prison, P.O. Box 900-F650, Avenal, California 93204, at all times mentioned.

Co-Plaintiff **ANTHONY BRAY**, prison #F-21271, was and remains confined at Avenal State Prison, P.O. Box 900-F650, Avenal, California 93204, at all times mentioned.

Co-Plaintiff **VICENT ALVAREZ**, prison #K-54223, was and remains confined at Avenal State Prison, P.O. Box 900-F650, Avenal, California 93204, at all times mentioned.

Co-PLaintiff **LEONEL GUZMAN**, prison #P-44524, was and remains confined at Avenal State Prison, P.O. Box 900-F650, AVenal, California 93204, at all times mentioned.

Co-Plaintiffs include, similarly situated ASP prisoners, as specifi-ically shown and alleged within the accompanying Statement of Claim.


**DEFENDANTS:**

Defendant **KATHLEEN DICKINSON**, Associate Director, CDCR (A), whose principal office address is 1515 S Street, Sacramento, California 95814, was at all times mentioned acting in such capacity and is being sued individually and officially.

Defendant **JAMES D. HARTLEY, Warden** Avenal State Prison (ASP), whose principal office address is One Kings Way, P.O. Box 8, Avenal,

3

California 93204, was at all times mentioned acting in such capacity and is being sued individually and officially.

Defendant **RON DAVIS, Chief Deputy ASP**, whose principal office address is One Kings Way, P.O. Box 8, Avenal, California 93204, was at all times mentioned acting in such capacity and is being sued individually and officially.

Defendant **CAPTAIN BIAGGINI, ASP F-Six**, whose principal business address is One Kings Way, P.O. Box 8, Avenal, California 93204, was at all times mentioned acting in such capacity and is being sued in his individual and official capacity.

Defendant **L. LOPEZ, ASP Appeals Coordinator**, whose principal business is One Kings Way, P.O. Box 8, Avenal, California 93204, was at all times mentioned acting in such capacity and is being sued in his official capacity.

Defendant **SERGEANT KRAMER, ASP F-Six**, whose principal business address is One Kings Way, P.O. Box 8, Avenal, California 93204, was at all times mentioned acting in such capacity and is being sued in his official capacity.

Defendant **SERGEANT RIDDLE, ASP F-Six**, whose principal business address is One Kings Way, P.O. Box 8, Avenal, California 93204, was at all times mentioned acting in such capacity and is being sued in his official capacity.

Defendant **J. ROBLES, Correctional Officer F650 ASP**, whose principal business address is One Kings Way, P.O. Box 8, Avenal, California 93204, was at all times mentioned acting in such capacity and is being sued in his individual and official capacity.

Defendant **OFFICER HEIN, ASP F650**, principal address P.O. Box 8, Avenal, California is being sued in his official capacity.

4

## Statement of Claim

The February 8, 2008, Avenal State Prison (ASP) "Program Status Report", in relevant part, states:

> "On February 7, 2008 two separate riots occurred involving 47 Fresno Bulldogs inmates and 32 Southern Hispanics on Facility Six. As a result of the riot **modified** program was initiated.......... Facility Six will remain on **Modified** Program pending searches and interviews to ascertain additional information into the cause....." See Exh "A".

Ongoing incidents occurred September 1, 2008, November 27, 2008. See Exh "B",

p. 2 . Despite awareness based prior violent incidents between Southern Hispanics and Fresno Bulldogs, the Warden at Avenal State Prison, on March 18, 2009, staged an incident when selected inmates from each group were directed to the yard where gladiator-style battle erupted. Exh "B", p.2.

On June 17, 2009, the Warden and Facility Six Captain, ordered and directed that selected inmates from these two groups were again ordered to the exercise yard where another gladiator-style battle ensued. EXh "B", p.2.

On July 7, 2009, the Warden and his Administrative Staff found that:

> "......all written reports and evidence pertaining to the riot which had occurred on June 17, 2009 has been evaluated. Additional meetings have occurred between staff and both factions separate from each other. Information from the interviews and meetings indicate the **Southern Hispanics** remain sincere in their request to have program on the facility without violence. Fresno Bulldog inmates are non-decisive and remain without any specific inmates who are willing to speak for the group. The totality of the circumstances which include staff written reports, inmate interviews and meetings all support the initial verbal reports that Fresno Bulldogs inmates initiated the violence against Southern Hispanics on the date of the riot. Based on the aforementioned, **effective July 14, 2009, Southern Hispanic inmates housed on Facility 6 will be afforded Saturday and Sunday Visiting privileges, Canteen, and Packages. Southern Hispanics will be allowed to return to work assignments, excluding Vocations and Education located on the Facility 6 Plaza areas. Assigned Southern Hispanics will be allowed to work PIA Laundry.** Additionally, there will be no Southern Hispanic Facility 6 kitchen workers, or Southern Hispanic Minimum B workers utilized. There will be no change to the current exercise yard schedule......." Exh "B", p.2.

By this point, Director's level consideration of the onging situation at Avenal State Prison Facility Six, were under review and direct participation in the Management and oversight by the Director and/or deputy Director's, or their designee, such that:

> "On Wednesday October 14, 2009, an unlock conference call with Mr.
> Subia was held. Per direction of Mr. Subia, Southern Hispanics to
> resume normal program. With the exception of cullinary work
> assignments and recreational activities during Fresno Bulldog yard,
> Southern Hispanics will resume normal program. Additionally, rival
> factions to be escorted to ducated destinations during rival faction.
> yard. " Exh "B", p.2.

Despite awareness that if Southern Hispanics came to any pre-set meetings on the

exercise yard, that this was a 'staged gladiator-style' event placing Southern

Hispanics at risk of serious injury or harm;

> "On Monday October 19, 2009, both factions were addressed regarding the
> return to normal programming for Southern Hispanics and a meet between
> Southern Hispanics and Fresno Bulldogs was scheduled by facility staff,
> however,although Fresno Bulldogs existed their housing unit to attend
> the meet, the meet did not occur as Southern Hispanics refused to exist
> their unit to attend the meet. As a result, Southern Hispanic privileges
> returned to status prior to conference call of October 14, 2009, with
> Mr. Subia." EXh "B", p.2.

Based on refusal of these State prisoners to exist the unit and again enage in

staged gladiator-style' events, they were punished with privileges and other civil

and constitutional rights being stripped. Between OCtober 19, 2009, and February 28,

2010, the prison ethic group, identified by administrators as 'Southern Hispanics',

were denied and deprived of these privileges and rights, until issuance of a directive:

> "Effective Sunday February 28, 2010, Southern Hispanic faction will no longer
> be allowed to visit on Sundays. As such, Southern Hispanic faction inmates
> will only be allowed to visit on Saturdays and Fresno Bulldog faction inmates
> will be allowed to resume visiting privileges and will be allowed to visit on
> Sundays only in accordance with Institutional/Departmental policy and
> Procedures." Exh "B", p.3.

Between October 27, 2010 and March 30, 2011, the Warden and Warden's Advisory

Group, held meetings with Associate Directors (conference calls), which noted that:

> "On Wednesday , March 30, 2011 a Modified Program Conference Call with
> Kathleen Dickinson, Associate Director (A), General Population Levels II and
> III, R. Wood, Associate Governmental Program Analyst and Captain A. Chamberlin,
> occurred. During the conference call it was discussed that on going interviews
> of Facility VI inmates **indicate that violence remains likely between both
> factions.** During the Conference Call, no changes were implemented to the
> current modified program in effect." Exh "B", p.3.

From March 30, 2011, both the Secretary of CDCR, through his Directors, their

deputies, associates and employees, including the Warden, Avenal State Prison and his

Warden's Advisory Group knew **"violence remains likely between both factions."**

6

Between March 30, 2011 and October 28, 2011, conference calls occurred discussing continuing events involving Southern Hispanics and Fresno Bulldogs, including April 13, 2011, notation that 'violence remains likely'; April 27, 2011, 'no program changes'; and:

> "On Wednesday, May 11, 2011 a Modified Program Conference Call with Kathleen Dickinson, Associate Director (A), General Population Levels II and III, R. Wood, Associate Governmental Program Analyst and Captain A. Chamberrlin, occurred. During the call the searches were discussed that occurred on Wednesday May 11, 2011, during searches of 610, ISU with the help of dogs, found contraband hidden in a common area of building 610, which is a Bulldog housing area. The contraband found consisted of 2 large shanks, 2 cell phones, heroin and other minor contraband. At the completion of the conference call, no changes were implemented to the current modified program in effect." Exh "B", p.3.

Records between 3/30/2011 and 10/28, 2011 further reflect that on June 8, 2011, June 22, 2011, July 6, 2011, July 20, 2011, August 3, 2011, the aforementioned Associate Director (A) Dickinson, and et al., held conferences in either the Chief Deputy or Warden's office discussing this situation with Kathleen Dickinson fostering placing selected Southern Hispanic and Fresno Bulldogs in housing unit 630, with full knowledge and awareness **"violence remains likely between both factions"**. Exh "B", p.4. Final notation shown on the August 29, 2011, "Program Status Report", comprising Exh "B", indicates: ".....there are no changes to current modified program. There will be no unlock conferences until further notice." Id. p.4.

On October 28, 2011, all Southern Hispanic prisoners housed at ASP Facility Six, unit 650 , were summoned by Defendants Second Watch (2nd) Officer Robles and 2nd Watch Sergeant Riddle, to come to the "Officers Podium". In complying, the assembled group were directed and ordered to place their signatures on a General Chrono which stated:

> "By my signature below, I am acknowledging that Facility VI Avenal State Prison is a program yard. I further acknowledge that I associate with the Southern Hispanics. I also understand that all inmates are expected to Program with all factions. Being aware of these expectations I am willing / not willing to program with all factions, especially Fresno Bulldogs. By refusing to participate I am aware that I may be subject to disciplinary actions pursuant to CCR 3005(c)." See Exh "C".

These "Willingness To Program" chronos, as they have been designated by Defendants

Kathleen Dickinson, Associate Director (A), Warden James D. Hartley, Chief Deputy Ron Davis, and their Management Team referred to as the "Warden's Advisory Group" (hereinafter designated "WAG'), were each and all aware that "violence remained likely" and yet they continued to orchestrate and stage gladiator-style incidents of violence where least restrictive means of achieving normalized programming on Facility Six existed; thus, Defendants Kathleen Dickinson, Associate Director (A), Defendant James D. Hartley, Warden, Defendant Ron Davis, Chief Deputy Warden, in concert with 'WAG', intentionally, callously and with disregard for the safety, welfare and health of Southern Hispanic Facility Six general population orchestrated and implemented policies and procedures which would foster violence, unrest and which did lead to, and result in, serious physical injuries, which was indicative of deliberate indifferences to the safety, welfare and health of this ethic group.

On November 6, 2011, per directive of Defendant James D. Hartley, Warden, and instructions from Facility Six, Defendant Captain Biaggini, as documented, Southern Hispanic inmates **Lopez** (#V-67340) and **Escaloca** (#V-90589) were removed from the F6 yard and housing Unit 650, taken to Ad-Seg for **"fomenting violence between Southern Hispanics and Fresno Bulldogs"**. The practices stemmed from Defendant's newly adopted policy that any inmate who voiced opposition to being used as pawns for staged events, or who refused to participate in a staged event which was 'likely to result in violence', would be singled out, removed to Ad-Seg and given **indefinite SHU (Security Housing UNit) placement as punishment,** such as happened to these named prisoners. These two inmates had refused to pack their property to be relocated to an area, housing Unit 630, where another staged event were in the implementation phase.

Therefore, as of November 6, 2011, any Southern Hispanic prisoner on Facility Six general population , who were all housed in Unit 650, who refused to sign the "Willingness To Program" Chrono, were issued CDC 115 Rule Violation Reports (RVR's), which would result in disciplinary action which included extention of their time to serve; if they

8

refused to exist the building to go participate in a staged event, they were stripped of any and all privileges, rights and immunities.afforded all other similarly situated Avenal State Prisoners housed on Facility Six, including exercise yard time, telephone pribileges, monthly canteen access to purchase soap, tooth-paste, toiletries, food stuffs, soups, or to receive quarterly vendor packages, or to have normalized visits with family; and if they agreed to this orchestrated gladiator-style battle, they were subject to harm, injury or death, as it was known among prisoners and administrators the Fresno Bulldogs were amassing prison-manufactured knives, and all Southern Hispanic who allowed themselves to be a participant were, following the malee, riot or incident, taken either to the hospital and eventually, to Ad-Seg, where an **indefinite SHU Program punishment** was imposed, where least restrictive means existed to quell violence.

Southern Hispanic Facility Six population had their family members contact the Secretary of Corrections Office complaining that this group were being discriminated against and unfairly denied rights and privileges, while being placed in untenable positions which could only lead to violence. On November 7, 2011, Ms. Ralyn Conner from the California Department of Corrections and Rehabilitation, Office of the Ombudman, summoned Plaintiff **Albert DeLeon** (#C-63149) concerning the 'intergration of Southern Hispanic and Fresno Bullodgs" where she was advised, to inform Secretary Matthew Cate, efforts to intergrate that factions was not feasible as 'violence remained likely'. Despite Secretary Cate's awareness through several channels, he failed to intercede to ensure circumstances which may result in injury, harm or death to a Southern Hispanic inmate housed at ASP, Facility Six, as of November 7, 2011 did not happen, and by such failure demonstrated indifference to whether this group were harmed, injured or killed, or continued to be deprived of rights/privileges despite no incident of group violence, inciting, or disruptive behavior to support the discriminatory policies and procedures being enforced against Southern Hispanics on Six yard.

On November 8, 2011, Defendant Officer Hein, 2nd Watch Housing Unit 650, ordered Unit 650 inmates Plaintiff's **Mario Gonzales** (F-94826) and **Anthony Bray** (F-21271), to

9

pack their property, as they were being relocated to Housing Unit 630 "to reintergrate" upon directive of Facility Six, Captain, who was aware of, and knowingly, intentionally placed them in circumstances "likely to result in violence". Plaintiff **Vicent Alvarez** (k-54223), and Plaintiff **Leonel Guzman** (P-44524), each housed in unit 640, were also ordered to pack their property for relocation to Housing Unit 630 "to reintergrate", upon directive of Facility Six, Defendant Captain, when Defendants collectively and individually, were aware of, and knowingly, intentionally placed these prisoners in circumstances "likely to result in violence".

Pursuant to this policy and procedure to orchestrate and stage incidents of violence, on November 9, 2011, those four Southern Hispanic, named Plaintiffs, and four Fresno Bulldogs selected and placed in Housing Unit 630 were involved in a violent and disruptive incident in which all eight inmates sustained physical injuries. The four Southern Hispanic inmates, Plaintiffs herein named, were taken to Administrative Segregation (Ad Seg), and the four Fresno Bulldogs were returned to Housing Unit 630 for normal modified programming, depsite all eight prisoners being involved in the malee.

The remaining Southern Hispanic inmate population then housed in Unit 650 were stripped of all privileges and rights, despite they were not on the scene of the unit 630 incident, did not participate in it, or facilitate, instigate or incite what occurred in Housing Unit 630.

On December 2, 2011, Plaintiff **Jorge Ornelas** (P-37370) lodged a CDCR GROUP appeal and grievance which stated:

> "**State briefly the subject of your appeal...:** Violation of Southern Hispanics Eight and Fourteenth Amendment by F6 Yard Officials
>
> "**A. Explain your issue:** This group appeal is being filed on behalf of F-6 G.P. Southern hispanics in A.S.P., Title 15 §3084.2(h). 1) Violation of Southern hispanics Eigth Amendment rights by F6 administration through orchestrating gladiator style fights for financial gain. 2) Violating Fourteenth Amendment by discriminating Southern hispanics rights imposing arbitrary Policies and disciplinary actions. On October 28, 2011 all Southern hispanics were ordered to the podium by C/O Robles and Sgt Riddle to sign a general chrono stating; "Refusing to sign will result in disciplinary actions". Subjecting Southerns with a catch-22, a practice which makes one a victim of its own provisions no matter the cause. On November 7, 2011 Ms. Ralyn Conner of Ombudsman came and interviewed inmate **Albert DeLeon**

10

#C-63149 concerning the intergration of Southern hispanics and Fresno
Bulldogs. (See supporting documents). On November 8, 2011 F6 prison
Officials executed the **intergration** of 4 Southerners and 4 Fresno Bulldogs
in building F630 violation of the Inmate Housing Policy (IHP)(See Title 15
§3269.1 and §3269.(a).) On November 9, 2011 an incident occurred between
4 Southerners and 4 Fresno Bulldogs. The 4 Southerners were forced into
Ad-Seg while the 4 Fresno Bulldogs were sent back into F630 to program. On
this same day non-participating Southern hispanics were punished loosing
all privileges. This is clearly a violation of Federal guaranteed rights,
therefore bringing a class action law suit under Title 42 of the U.S. Code,
Section 1983 against F6 prison Officials and Administration.

  "Signature: J.A. Ornelas          Date submitted:  12-2-2011

"B. **Action requested:**    That Southern hispanics in F6 Facility be removed from
F6 yard and be re-housed to A1 and E5 Yard(s) General Population in a timely
fashion. 2) That the privileges taken on November 9, 2011 from Southern
hispanics housed in F650 be reinstated until the completion of re-housing of
Southern hispanics to A1 and E5 Facility. 3) Any continuance of Federal
guaranteed rights violation will result in further civil and criminal
liabilities. 4) No reprisals shall be taken against any inmates involved
in this group class action appeal.

  "**Signature:** J.A. Ornelas          Date submitted:  12-2-2011 ". See:

  Exh "D", p.4-5.

  This appeal were logged as #ASP-M-11-01322, appearing as Exh "D", pp.1-12.  It

included CDCR 602-G 'Inmate/Parolee Group Appeal' forms, pages 7 through 11, signed by:

| "CDC Number | Name | Date: | |
|---|---|---|---|
| H-83069 | Manuel Solorio | 12/2/11 | |
| H-36347 | Gilbert Briones | 12-2-11 | |
| C-63149 | Albert DeLeon | 12/2/11 | |
| Gf-08610 | Michael Wheeler | 12/2/11 | |
| V-00682 | David Villarreal | 12/2/11 | |
| P-70875 | Greg Cesena | 12-2-11 | |
| J-11990 | A Castillo | 12-2 -11 | |
| T-86697 | Juan Mari | 12-2-11 | |
| E-28771 | Richard Loya | 12-2-11 | |
| F-27252 | Alfredo Avila | 12-2-11 | |
| H-73372 | Juan Martinez | 12-2-11 | |
| K-99331 | Jose Garcia | 12-2-11 | (p.7) |
| K-59811 | Manuel Morales | 12-2-11 | |
| AG-7563 | Cesar Riveras | 12-2-11 | |
| T-84138 | Danny Vasquez | 12-2-11 | |
| V-91617 | Jorge Hernandez | 12-2-11 | |
| J-77468 | Juan Ramirez | 12-2-2011 | |
| H-40823 | Robin Carranza | 12-2-2011 | |
| D-69451 | Gustavo Lopez | 12-2-2011 | |
| E-78040 | Ruben Macias | 12-2-11 | |
| E-42203 | Ricardo Alvarez | 12-2-11 | |
| D-84206 | Javier Arzaga | 12-2-11 | |
| AF-6759 | Israel Martinez | 12-2-11 | |
| V-90589 | Miguel Escalera | 12-2-11 | (p.8) |

[Continued next page....]

| H-37902 | Danny Villanueva | 12-2-11 | |
| AC-9138 | Rudy Urias | 12-2-11 | |
| AD-2059 | Emilio Robles | 12-2-11 | |
| P-17786 | William Barrios | 12-2-11 | |
| P-18106 | Nicholas Osorio | 12-211 | |
| AH-5383 | Egar Castaneda | 12-2-11 | |
| J-73835 | Enrique Duarte | 12-2-11 | |
| K-87502 | William Lucero | 12-02-11 | |
| AH-5385 | Craig D. Hilbun | 12-2-11 | |
| E-22372 | Antonio Alegna | 12-2-11 | |
| J-90740 | Gilbert Fierro | 12-2-11 | |
| F-66263 | Alberto Gonzalez | 12-02-11 | (p.9) |
| | | | |
| AC-3348 | Juan Luis Sandoval | 12-2-11 | |
| F-62631 | Jose Valadez | 12-2-11 | |
| AH-8875 | Davis Vasquez | 12-2-11 | |
| V-49080 | Ruiz Eleazar | 12-2-11 | |
| C-86891 | Jesse Cantu | 12-2-11 | |
| AH-1561 | Kevin Tello | 12-2-11 | |
| G-45549 | M. DeLaTone | 12-2-11 | |
| C-24796 | David Montes, Jr. | 12/2/11 | |
| AH-3284 | Andrade Miguel | 12-2-11 | |
| G-50623 | Matthew Recendez | 12-2-11 | |
| AG-5130 | Treylor Damian | 12-2-11 | |
| J-31234 | Romero Francisio | 12-2-11 | (p.10) |
| | | | |
| F-07922 | Miguel Carreon | 12-2-11 | |
| AD-6819 | Phillip Sisnzros | 12-2-11 | |
| G-24051 | Rogelio Morfin | 12-2-11 | |
| V-68732 | Alejandro Ruiz | 12-2-11 | |
| AH-3386 | Emanuez Hernandez | 12-2-11 | (p.11) |

See: Exh "D", pp.7-11.

Attached to Exh "D", at page 12, were a "Affidavit", by **Albert DeLeon** (C-63149), which states:

"**Albert De Leon** states:

"On November 7 – 2011 Ralyn Conner came and interview me regarding phone calls that she received from my family members concerning the reckless policy that are being created by prison officials and administration.

"In that interview I asked Ralyn Conner; ('Why was a Memorandum put out taking disciplinary actions before any incident had taken place?'). Ralyn Conner simply stated; '(What does history tell us?  It repeats itself!)' Taking into consideration that inmates where going to get injured and no preventitives measures where going to be taken.

"I **Albert De Leon** CDCR #C 63149  declare under the penalty of perjury under the law of the State of California that the foregoing is true and correct.

"Date  11-25-2011          (signature) **Albert De Leon**
                                        "Albert De Leon C-63149".

On December 7, 2011, all Southern Hispanic inmates whom were assigned a prison job, vocation or educational assignment, were summoned to the Program Office.  Present were Defendant Captain Biaggini, Ms. S.A. Bryant, Facility Six CCII, and Correctional

Counselors Ms. Munoz and Ms. Torrez, both CC1's.   A Unit Classification Committee

(UCC) ensued in which they were all removed from their job, vocation or educational

assignment, as continuing punishment for refusal to engage in orchestrated gladiator-

style incident of violence by agreeing to the (so-called) 'reintergration' when

Defendants, individually and collectively, were aware that bringing these two groups

together was 'likely to result in violence'.

The 'Willingness To Program' Policy implemented at behest of Defendant Kathleen

Dickinson, Associate Director (A) [Ass.Dir.(A)], by and through Defendant Warden James D

Hartley, Defendant Ron Davis, Chief Deputy, and 'WAG', as of November 7, 2011, when

Secretary Cate's failed to intercede to prevent its enforcement to ensure no other

inmate at ASP, Facility Six were harmed, injured or killed, demonstrated that all

Defendants, from the Secretary CDCR downward, failed the basic precept to consider any

and all alternatives, as the Departments mandate requires.   That requirement states:

> "The Department must determine that no reasonable alternative considered
> by the Department, or that has otherwise been identified and brought to the
> attention of the Department, would be more effective in carrying out the
> purpose for which the action is proposed, or would be as effective and less
> burdensome to affected private persons, than the proposed policy, action or
> decision."

Both Secretary Cate's and Defendant Kathleen Dickinson, Ass.Dir.(A), were under

statutorily imposed duties:

> "Commencing July 1, 2005, the supervision, management and control
> of the state prisons, and the responsibility for the care, custody,
> treatment, training, discipline and employment of persons confined therein
> are vested in the Secretary of the Department of Corrections and
> Rehabilitation."   Penal Code §5054.

> "Any officer or employee of the Department of Corrections and
> Rehabilitation designated in writing by the Secretary, shall have the
> power of a head of a department pursuant to Article 2 (commencing at
> Section 11180) of Chapter 2, Part 1, Division 3, Title 2, of the
> Government Code."   Penal Code §5052.

> "Whenever a power is granted to the Secretary or a duty is imposed
> upon the Secretary, the power may be exercised or the duty performed by
> a subordinate officer to the Secretary or by a person authorized pursuant to
> law by the Secretary."   Penal Code §5055, in part.

> "A person sentenced to imprisonment in a state prison may during that
> period of confinement be deprived of such rights, and only such rights, as
> is reasonably related to legitimate penological interests."   Penal Code
> §2600, in part.

"The person of a prisoner sentenced to imprisonment in the State prison is under the protection of the law, and any injury to his person, not authorized by law, is punishable in the same manner as if he were not convicted or sentenced." Penal Code §2650.

"No punishment, except as may be authorized by the Director of Corrections, shall be inflicted and then only by the order and under the direction of the wardens......" Penal Code §2651, in part.

"It shall be unlawful to use in the prisons, any cruel, corporal or unusual punishment or to inflict any treatment or allow any lack of care whatever which would injure or impair the health of the prisoner, inmate or person confined........  Any person who violates the provisions of this section or who aids, abets, or attempts in any way to contribute to the violation of this section shall be guilty....." Penal Code §2652, in part.

On December 13, 2011, Defendant Sgt. Kramer and Officer Davis, pursuant to this discriminatory policy, on orders of Warden and Captain, came to Housing Unit 650, where inmates **Miguel Escalera** (V_90589) and **A. Castillo** (J-11990), who had recently been returned from Ad-Seg, were handcuffed and taken the Facility Six Program Office. The Defendant, Captain Biaggini, informed them that the 'reintergration' will continue and further, that the CDC 602 Appeal which had been filed "Will get nowhere". Each were threatened with additional reprisals and punishment if they refused to participate in orchestrated incidents which were 'likely to result in violence'.

On December 16, 2011, inmate **J. Ornelas** (P-37370) was interviewed by Lieutenant M. Marmolejo, pursuant to the Group appeal, log #ASP-M--11-01322. Plaintiff **Ornelas** advised the interviewing Lieutenant that the appeal was not a 'Staff Complaint' against Sergeant B. Riddle and Officer J. Robles, but as stated on its face, it was a GROUP appeal of the Departmental/Institutional policy of discrimination against Southern Hispanic inmates housed on Facility Six.

On December 12, 2011, when prisoner **Ornelas** and the Group prepared their appeal and grievance, available to them was the "Rules and Regulations" 'updated through January 1, 2011', which did not reflect substantial amendments, revisions reorganizing of the entire appeal process. Under the 'Rules & Regulations' with which they relied, there was no 'cancellation' of an appeal, only rejection under former 15 CCR §3084.3(c). On or about January 28, 2011, the Department issued "Notice of Change To Regulations' containing a 'Public Comment Period' culminating March 22, 2011. AT ASP a single copy

of this were given to inmate members of the Men's Advisory Council (MAC) or as they were now known, Inmate Advisory Council (IAC); and therefore, most of the prisoners housed at ASP in the individual units, if they did not have a representative serving on the IAC, as the Southern Hispanics, were not privy to the wholesale revisions to the appeal process and the rules and regulations governing it. Since beginning this appeal process December 2011, they were, as of March 15, 2012, able to review that Departmental Notice containing these appeal process revisions. Because Southern Hispanic inmates on Facility Six were now, and previously, isolated from the other prisoners, not allowed access to the Law Library, provided exercise yard time apart and separate from the rest of the Facility, or repeatedly removed and placed in Ad-Seg during this period, even inclusive of being fed separately from the remainder of the Facility housing units, there was no viable means or opportunity to have acquired access to the wholesale rule changes. Defendants, as of the date of filing this 42 U.S.C. §1983 and §1985 Complaint, have not updated the Rules and Regulations available to every prisoner which contains these wholesale revisions to the appeal process. Based on their relevance to these proceedings and this Complaint, the following 'revised' regulations are germaine to the causes of action, as will be shown:

> "Article 8. Appeals
> "3084. Definitions
> "New Sections 3084 text and subsections (a) through 3084(h) are adopted to read:
>
> "For the purpose of Article 8, the following definitions shall apply:
>
> "(a) Appeallant means an inmate or parolee who has submitted an appeal.
>
> "(c) Material adverse affect means a harm or injury that is measurable or demonstrable, or the reasonable likelihood of such harm or injury. In either case, the harm or injury must be due to any policy, decision, action, condition, or omission by the department or its staff.
>
> "(e) Remedy means a process or means to address an issue or correct a wrong.
>
> "(f) Reviewer means the individual with the signature authority for the approval or disapproval of an appeal response at any level.
>
> "(g) Staff misconduct means staff behavior that violates or is contrary to law, regulation, policy, procedure, or an ethical or professional standard.
>
> "3084.1. Right To Appeal.
> "Section 3084.1 is amended to read:

15

"The appeal process is intended to provide a remedy for inmates and parolees with identified grievances and to provide an administrative mechanism for review of departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates and parolees. All appeals shall be processed according to the provisions of Article 8, Appeals, unless exempt from its provisions pursuant to court order or superseded by law or other regulations.

"Subsection 3084.1(a) is amended to read:

"(a)   Any inmate or parolee under the department's jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health,safety, or welfare.

"New subsection 3084.1(b) is adopted to read:

"(b)   Unless otherwise stated in these regulations, all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted. All other lower level reviews are subject to modification at the third level of review. Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, which is incorporated by reference, and addressed through all required levels of administrative review up to and including the third level.   In addition, a cancellation or rejection decision does not exhaust administrative remedies.

"Subsection 3084.1(d) is amended to read:

"(d)   No reprisal shall be taken against an inmate or parolee for filing an appeal. This shall not prohibit appeal restrictions against an inmate or parolee abusing the appeal process as defined in section 3084.4, nor shall it prohibit the pursuit of disciplinary sanctions for violation of department rules.

"Section 3084.2 is amended to read:
"3084.2.   Appeal Preparation and Submittal.

"(d)   If dissatisfied with the second level response, the appellant may submit the appeal for a third level review, as described in section 3084.7, provided that the time limits pursuant to section 3084.8 are met.   The appellant shall mail the appeal and supporting documents to the third level Appeals Chief via the United States mail service utilizing his or her own funds, unless the appellant is indigent in which case the mailing of appeals to the thrid level of review shall be processed in accordance with indigent mail provisions pursuant to section 3138.

"(h)   Group appeal. If a group of inmates/parolees intend to appeal a policy, decision, action, condition or omission affecting one member of the group, one CDCR Form 602, Inmate/Parolee Appeal, shall be submitted describing the appeal issue(s) and action requested, accompanied by a CDCR Form 602-G (08/09), INmate/Parolee Group Appeal, which is incorporated by reference, with the legible name,departmental identification number, assignment, housing, and dated signature of the inmate or parolee who prepared the appeal.   Each page of the CDCR Form 602-G must contain the appeal issue,

16

action requested, and a statement that all the undersigned agree with
the appeal issue/action requested.

"(h)(4)  An appeal shall not be accepted or processed as a group appeal if the
matter under appeal requires a response to a specific set of facts (such
disciplinary and staff complaint appeals) that are not the same for all
participants in the appeal.  In such case, the group appeal shall be
screened out and returned to the inmate or parolee submitting the appeal
with directions to advise all those who signed the appeal attachment to
submit individual appeals on their separate issues.

"(h)(6)  A group appeal counts towards each appellant's allowable number
of appeals filed in a 14 calendar day period.

"(i)(1)  The original inmate or parolee, and as needed for clarification
of issues, one or more of the other inmates or parolees, shall be interviewed.

"Section 3084.5 is amended to read:
"3084.5.  Screening and Managing Appeals.

"(a) Each institution head and parole region administrator shall designate
an appeals coordinator at a staff position level no less than a Correctional
Counselor II or Parole Agent II.

"(b)  The appeals coordinator or a delegated staff member under the direct
oversight of the coordinator shall screen all appeals prior to acceptance
and assignment for review.

"(b)(3)  When an appeal is not accepted, the inmate or parolee shall be
notified of the specific reason(s) for the rejection or cancellation of
the appeal and of the correction(s) needed for the rejected appeal to be
accepted.

"(b)(4)  When an appeal is received that describes staff behavior or activity
in violation of a law, regulations, policy, or procedure or appears contrary
to an ethical or professional standard that could be considered misconduct
as defined in subsection 3084(g), whether such misconduct is specifically
alleged or not, the matter shall be referred pursuant to subsection 3084.9(i)(1)
and (i)(3), to determine whether it shall be:

"(A)  Processed as a routine appeal but not as a staff complaint.

"(B)  Processed as a staff complaint appeal inquiry.

"(C)  Referred to Internal Affairs for an investigation/inquiry.

"(b)(5)  If an appeal classified as a staff complaint includes other non-
related issue(s), the provisions of 3084.9(1)(2) shall apply.

"Section 3084.6 is amended to read:
"3084.6  Rejection, Cancellation, and Withdrawal Criteria.

"(a)  Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled
pursuant to subsection 3084.6(c), as determined by the appeals coordinator.

"(1)  Unless the appeal is cancelled, the appeals coordinator shall provide
clear and sufficient instructions regarding further actions the inmate or
parolee must take to qualify the appeal for processing.

"(3)  At the discretion of the appeals coordinator or third level Appeals
Chief, a cancelled appeal may later be accepted if a determination is made
that the cancellation was made in error or new information is received which
makes the appeal eligible for further review.

17

"(4)   Under exceptional circumstances any appeal may be accepted if the appeals coordinator or third level Appeals Chief conclude that the appeal should be subject to further review.   Such a conclusion shall be reached on the basis of compelling evidence or receipt of new information such as documentation from health care staff that the inmate or parolee was medically or mentally incapacitated and unable to file.

"(c)   An appeal may be cancelled for any of the following reasons, which include, but are not limited to:

"(3)   The inmate or parolee continues to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal including failure to submit necessary supporting documents, unless the inmate or parolee provides in Part B of the CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, a reasonable explanation of why the correction was not made or documents are not available.

"(c)(8)(B)   If the appellant provides sufficient evidence to establish that the interviewer has a bias regarding the issue under appeal, the appeals coordinator shall assign another interviewer.

"(d)   Group appeals shall not be cancelled at the request of the submitting individual unless all of the inmates signatories are released, transferred, or agree to withdraw the appeal.

"(e)   Once cancelled, an appeal shall not be accepted except pursuant to subsection 3084.6(a)(3); however, the application of the rules provided in subsection 3084.6(c) to the cancelled appeal may be separately appealed. If an appeal is cancelled at the third level of review, any appeal of the third level cancellation decision shall be made directly to the third level Appeals Chief.

"Section 3084.7 is amended to read:
"3084.7.   Levels of Appeal Review and Disposition.

"(a)   All appeals shall be initially submitted and screened at the first level unless the first level is exempted.   The appeals coordinator may bypass the first level for appeal of:

"(1)   A policy, procedure or regulation implemented by the department.

"(2)   A policy or procedure implemented by the institution head.

"(3)   An issue that cannot be resolved at the division head level such as Associate Warden, Associate Regional Parole Administrator, PIA Manager or equivalent.

(b)(1)   A second level review shall constitute the department's final action on appeals of disciplinary actions classified as 'adminstrative' as described in section 3314, or of minor disciplianry infractions documented on the CDC Form 128-A (re. 4-74), Custodial Counseling Chrono, pursuant to section 3312(a)(2), and shall exhaust adminbistrative remedy of these matters.

"(g)   When a group or multiple appeal is received, one or more of the participating inmates/parolees shall be interviewed to clarify the issue(s).

"(h)   At the first and second level of review, the original appeal, within the time limits provided in section 3084.8, shall be returned to the appellant with a written response to the appeal issue providing the reason(s) for each

18

decision. Each response shall accurately describe the matter under appeal and fully address the relief requested. If the decision is a partial grant, **the response** shall clarify for each requested action whether it is granted, granted in part, or denied, and shall also state the action taken. "

On December 17, 2011, Defendant Sgt Kramer and Sgt. Holbrook, at approximately 9:30 p.m. came into the unit, 650, and spoke to inmates **Ruiz** (V-68732) and **Frones** (V-07790) stating they needed Southern Hispanic inmates to move into unit 630 and 'intergrate with Fresno Bulldogs'; both inmates reiterated so long as 'violence remained likely', no Southern Hispanic was willing to place themselves in harms way, as they could only either be injured, killed or more time added, and other sanctions. Both inmates informed these two Sgt's that there was a least restrictive means of achieving normalicy by moving the Southern inmates to Facility One and Five, thereby solving the problem.

On December 26, 2011, at approximately 9:13 a.m., during Southern Hispanic morning exercise yard time, three (3) Fresno Bulldogs were released from housing unit 640 resulting in injuries to six inmates; four ; of whom, it was documented: inmates **Morrissey** (G-10846), **Vasquez** (V-45348), **Dunivan** (AG-5130), and **Gonzalez** (F-66263). These inmate injuries were another instance of orchestrated and staged events; no Southern Hispanic inmate on the yard at that time could prevent efforts to avoid violence when staff controlled who had yard-access, and instead of protecting all prisoners and ensuring that their safety were of primary concern, prison staff fostered, created and manufactured circumstances 'likely to result in violence'. This was intentional, callous and wanton disregard for the safety, welfare and health of Southern Hispanic prisoners housed on Facility Six. In other words, if Southern Hispanic inmates were going to refuse to pack their belonging and property willingly to move to housing unit 630, where violence remained likely to occur', then prison officials would create such circumstances by releasing members of the rival group ensuring violence did happen.

Following this morning yard incident, Lt. M. Marmolejo contacted inmate **Ornelas** (P-37370) advising him that the Group appeal was, in fact, going to be processed as

19

a 'Staff-Complaint' and that Ornelas needed to sign a CDC 1858, **"Rights & Responsibil-**
**ity Statement"**; the Lieutenant documented that Ornelas responded, **"At this time**
**you shared with me that you were not trying to blame any particular staff members**
**and that though you initially signed the 1858 you elected to refuse because you are**
**trying to get this matter on record for future court action."** See Exh "D", p.1.  It
is alleged that these actions of staff at ASP were a fabricated instance where the
face of the Group appeal clearly and distinctly alleges challenging a "policy and
procedure implemented by the department or institution head', within the meaning of
15 CCR §3084.7(a)(1) & (2); and their issue met the definition of 'a departmental
policy, decision, action or condition' for which **"any inmate under the department's**
**jurisdiction may appeal"** as guaranteed by law (15 CCR §3084.1(a)).   Therefore, as
Lt. Marmolejo explained to Ornelas, the Appeals Coordinator stated if this 1858 were
not signed, the 'Staff Complaint' would not be considered.  Plaintiff Ornelas reiterated
that this was not a staff complaint.  Therefore, because Defendant Captain Biaggini
was informed Southern Hispanic inmates had lodged the appeal, and he informed members
of their group that this appeal "would get nowhere", the Appeals Coordinator, L. Lopez,
Defendant, created a ruse to thwart, hinder, impede and obstruct Plaintiff's collective
Group effort to seek a remedy to address their issue and correct a wrong, as granted
them under the rules and regulation. 15 CCR §3084(e).  Thus, Defendant L. Lopez, as
Appeals Coordinator demonstrated 'bias' as this claim on appeal was "an issue that
cannot be resolved at the dividion head level" affecting a specific, identifible
group of ASP prisoners.  Defendant Lopez knowingly, intentionally, maliciously and
falsely changed the Group appeal designation, at behest of upper administration,
to assert it was a staff complaint against Sgt. Riddle and Officer Robles who were
each following orders and instructions to approach all Southern Hispanic inmates
in unit 650 and demand they endorse the "Willingness To Program" chronos.  In fact,
as proof that this action of changing the appeal designation had an unlawful purpose
the "Rights & Responsibility Statement" had, during late 2007, early 2008, been

20

declared 'unconstitutional' by the Ninth Circuit Court of Appeals; thus, as Appeals Coordinator, Defendant Lopez was aware, or should have been aware, CDC form 1858 was unconstitutional (he delivered the Notice of Court action to the Facility Law Library, which advised of this occurrence in 2007/2008, to be posted). Defendant Captain Biaggini, and Defendant L. Lopez, Appeals Coordinator, in furtherance of the Warden's agenda, to impede, hinder, prevent and obstruct Southern Hispanic inmates from appealing this issue, and thus having access to the Courts thereafter, created a false premise and reason to deny and deprive them of their constitutionally guaranteed right to seek redress of grievance under 42 U.S.C. §1997, et seq. The Defendants, individually, and collectively, therefore conspired to deny and deprive Plaintiff's of third level access when they intentionally, maliciously, knowingly and deliberately changed the appeal designation aware that this would preclude any further appeal review and consideration and showing a callous disregard for the rights of Plaintiff's.

On December 29, 2011, Lt. Marmolejo signedoff on the 'Staff Complaint' showing that it had been 'partially granted'. See Exh "D", p.4. Defendant Ron Davis, Chief Deputy, signed off checking the box 'other' noting 'CANCELLED'; p.4; Defendant Hartley then signed off on the appeal Exh "D", p.1, which stated "The **appeallant is advised that this issue may not be submitted for a Director's Level of Review, due to appellant's refusal to sign the CDC 1858, Rights and Responsibility Statement."** p.2. Defendant's knowing acted in concert to deny, thwart and prevent this Group from obtaining a Third Level response, even though this policy and its implementation were at behest of Kathleen Dickinson, Assoc.Dir.(A), Defendant, who was spearheading efforts to punish Southern Hispanic inmates at ASP, by stripping them of all civil, constitutional, statutory and administrative rights and remedies, absent conduct or behavior warranting and supporting these acts.

Approximately January 1, 2012, Captain Biaggini, Defendant began moving all non-Lifer Southern Hispanics housed in unit 650 and swapping them out for Southern

21

Hispanic inmates then housed on the Facility Five, ASP, who were Lifer's. These Facility Five Lifer-inmates were those who had been confined at least 15 to 20 years; had earned their relocation years ago from higher custody level four and three prisons, and who were programming with vocations, job assignments and educational program participation on Facility Five. This group were then delivered to the Six Yard,placed in housing unit 650, where they were stripped of all rights, privileges, and programming opportunities solely based on being selected and moved to another yard by Defendants, collectively. Therefore, 40-something inmates who days previous were enjoying access to the Law Library, to exercise yard time all day every day, canteen, receiving quarterly packages, telephone and visiting privileges, were suddenly placed on a yard and in circumstances where they were immediately stripped of all rights, privileges and constitutional guarantees solely based on their race, heritage, ethnic background, where they were from geographically, and despite having broken no rules, regulations, nor exhibited any conduct or behavior warranting sanctions and/or punishment, they have been stripped of all rights and placed in harms way because now they are being informed they must move into housing unit 630 or face repications for refusing and failing to do so.

Because of Defendant's act and conduct towards these affected Lifers, and the other members of this identfible Group of inmates, they require injuctive relief to protect them from the ongoing efforts of Defendant Kathleen Dickinson, Assoc.Dir.(A), Defendant Hartley, Warden, Ron Davis, Chief Deputy, and 'WAG', who are acting in concert to deny and deprive this group of inmates, and similarly situated prisoners at ASP, of their right to enter prison, serve their time accordingly, and be duly released once served without facing being a victim of injury, or suffering harm, or possibly killed or maned, and deprived of opportunity to attend classes, vocations and job assignments solely because they are members of an identifible class of prisoners known as Southern Hispanic.

On January 9, 2012, the cancelled appeal was returned to inmate Ornelas, with the findings and notations as previously shown. Exh "D".

22

On January 19, 2012, inmate Ornelas resubmitted the appeal adding, at section F, of the appeal form: "The Appeals Coordinator has misunderstood the group 602 brought by Southern Hispanics housed in ASP F-6. Most of the issues in the group 602 are being ignored. As I stated to Lt. Mamarlejo, that I did want to sign the CDC 1858 Rights & Responsibility Statement form if it was only singling out two particular officers. The group 602 was intended against F-6." Signed J.A. Ornelas, dated 1-19-2012. It was stamped received MAR-6 2012, and returned to Plaintiff unprocessed or considered. Exh "D", p.4.

On February 7, 2012, the removal of Southern Hispanic non-Lifer inmates from Facility Six, unit 650, to Facility Five, and brining over Lifer's from Facility Five, continued; they were taking approximately five inmates at a time.

On February 13, 2012, Defendant Captain Biaggini ordered inmate Manuel Solario (H-83064) and Juan Martinez (H-73372) brought over to his office. He informed these two inmates that he was going to move four Southern Hispanic inmates into housing Unit 630, with the Fresno Bulldogs. They advised him that would not be feasible as none of the affected group in 650 would voluntarily move placing themselves in harms way; he advised that anyone who refused would be placed in Ad-Seg with an indefinite SHU program. They advised him any one going in there was going to end up in the hole anyway, or hospital after being possibly injured, with additional time if they had to defend themselves. They requested to be transferred to another prison or to the One yard, as a least restrictive means of achieving normal program of Facility Six. Defendant Captain Biaggini stated that he would move the first four, and then four more, until they all complied with his Orders to relocate. Therefore, the 40-odd Southern Hispanic Lifer inmates which had been relocated to Facility Six from Facility Five, after 10 to 30 years of service of their prison terms, and not having disciplinaries, nor conduct likely to result in violence, were bing forced into circumstances in which they were taken from their job assignments, school, vocations, and placed in harms way, both physically, mentally and in actual fact,

23

based solely and exclusively upon their race. This was, and remains a discriminatory policy, and an unconstituional procedure has been, and is being, utilized to deny and deprive them of protection from physical harm or injury, or the threat of receiving disciplianries in defending themselves when attacked. Therefore, Plaintiff's require additional injuctive relief which directs removal of the false, unconstitutional information which has been generated by Defendant(s), individually and collectively, placed in their Central-Files, their Confidential Files, and on 128 Chronos, which falsely, maliciously and inaccurately label them violent, disruptive and creating disorder and disrupting the orderly administration of the prison; which false documents will be relied upon by the Board of Prison Terms to deny and deprive them of suitable for parole findings. Therefore, they are especially harmed and prejudiced by these policies nad procedures requiring exceptional injunctive relief which removes the unlaw taint created by Defendants based on application of their unconstituional policy and procedure known as the "Willingness To Program" Policy; and further, such sanctions and punishment for Defendants as to deter further acts of a similar nature, and punish them for the wholesale deprivation of these prisoners rights to be free of actual harm, or the threat of being injured.

On February 15, 2012, Defendant Captain Biaggini ordered inmates **Manuel Solario** (H-83064), **Juan Martinez** (H-73372), and **Jorge Ornelas** (P-37370), brought to his office; inmate **Solario** was in the shower at the time; he was removed, handcuffed, and delivered to the Defendant Captain in his under-shorts. The Captain stated that even though the Bulldogs don't want to program with Southerners, "He does not care"; he stated that he has discretion to do what he wants on Facility Six, and that the 602 which Southerners have filed, he was going to "Wipe his ass with it!"

On February 17, 2012, all Southern Hispanic inmates in F-650 were called to the podium by Defendant Officer Robles; they were again instructed, they must sign "Willingness To Program" chronos, as many of them were lifers who had recently been relocated from Facility Five, and had not signed. That if they refused, they would be issued disciplinary RVR's, and other possible sanctions would be imposed.

24

Based on these ongoing and continuing circumstances which threaten all inmates classified as Southern Hispanic, whether they are validated gang members, or just happen to be originally from Southern California, and whether they are Christians, law-abiding prisoners, or whether they advocate violence, or incite unrest, or have committed acts which warrant punishment, separation and isolation, they are being subjected to cruel and unusual punishment, treated differently than all other prisoners housed at ASP, and there is an atmosphere existing and being fostered which creates circumstances where one or more of them is more likely than not going to be a victim of a violent encounter with a rival prison faction under incidents orchestrated by prison administrators. These administrators, Defendants herein, are indifferent to whether they are harmed, injured, killed, or simply have additional time imposed, as the Warden, Captain and Associate Director, have 'discretion' and "Don't Care!"

### First Cause of Action

Defendant KATHLEEN DICKINSON, Assoc.Dir.(A), did knowingly, intentionally and callously institute a Discriminatory Policy known as "Willingness To Program" in disregard for health, welfare & safety of Plaintiff's, and in concert with every named Defendant did deliberately orchestrate and enforce this discriminatory Policy in violation of 42 U.S.C. §1983 and §1985, where less restrictive means were available, resulting in Plaintiff's being deliberately harmed and injured in violation of 8th and 14th Amendments

### Second Cause of Action

Defendant JAMES D. HARTLEY, Warden ASP, in concert with subordinate employees, agents and officers, inclusive of Defendant's Ron Davis, CDW; Captain Biaggini, Fac.6; L. Lopez, Appeals Coordinator, did Unconstitutionally deprive Plaintiff's, collectively, of their Due Process / Equal Protction guarantees to pursue redress through an administrative grievance/appeal process when Appeal Log #ASP-M-11-01322 was 1) treated as staff complaint 7 not GROUP Appeal; 2) Cancelled erroneously and unconstitutionally in violation of 42 U.S.C. §1983 and §1985, denying administrative access to Third Level Review in violation of 42 U.S.C. §1997, et seq., and the 5th & 14th Amendments

### Third Cause of Action

Defendants, individually, collectively, did orchestrate and enforce falsely created events and circumstances resulting in placement of false, erroneous, inaccurate information in Plaintiff(s) prison files in violation of the Information Practices Act, the Due Process Clause

25

of the Fourteenth Amendment which adversely prejudices them
individually, and because prison officials maintain absolute
control and custody of these files and records, & will otherwise
rely on this false/inaccurate information to deny or deprive
Plaintiff's of Rights and Privileges due them, Defendants have
acted contrary to the Constituional and Civil Rights of this Class
in violation of 42 U.S.C. §1985, and §1997, warranting such relief
and damages as will remedy the harm and injury under 42 U.S.C. §1983

## Relief Requested

1.   Plaintiff Demand Jury Trial.

2.   Plaintiff seek 'Class Certification pursuant to Rule 23, FRCP' based
one numerous class members, common issues and claims, who are mentioned by name
within the Statement of Claim, but not appearing or asserted on the face of the
Complaint.

3.   Plaintiff(s) seek Injunctive relief: (a) removing all documents, chronos,
notations and information placed in all named Plaintiff's C-file, inclusive of CDCR
Confidential 812 files; (b) permanently enjoing Defendants, their subordinates,
employees or agents from repeating orchestrated incidents which are 'likely to result
in violence' involving Plaintiffs'; and (c) enjoining Defendants, their subordinates,
employees or agents or successors in office or position from reprisals or retailiation
against Plaintiffs.

4.   Plaintiff seek Declaratory relief declaring that:

> All California prisoners have a guaranteed Eigth Amendment right
> to serve their prison terms free of incidents/circumstances where
> 'violence is likely' and circumstances manufactured by prison
> administrators creating such atmospheres, which are then used as
> pretext to intentionally orchestrate denial of rights, privileges
> and immunities where 'violence is likely' violate Eighth Amendment
> proscriptions and common notions of reasonable State action.
> Plaintiffs', Southern California hispanic prisoners, have heretofore
> been unconstitutionally subjected to such a State-created Policy,
> and such procedures were, are and remain, violative of fundamental
> constitutional guarantees emanating from the Eighth and
> Fourteenth Amendments Equal Protection/Cruel & Unusual Punishment
> Clauses, where less restrictive means to achieve State penolgical
> goals existed.

5.   Plaintiff's seek Compensatory damages for all Plaintiff's who suffered

actual physical harm and sustained physical injuries, and nominal for those remaining Class members whose programs and ability to lawfully serve their time were impeded by this "Willingness To Program" Policy; and **Punitive** damages according to proof against all Defendants individually upon whom **Causes of Action** are sustained, with additional punitive damages officially against each Defendant to punish and deter such further and future acts.

6.    Plaintiff's seek appointment counsel, under 18 U.S.C. 3006(g), and cost of suit.

We, the undersigned, do declare under the penalty of perjury, that the allegations, claims and assertions of this Complaint are true and correct, being duly executed here at Avenal State Prison, County of Kings, State of California.

JORGE ORNELAS, Plaintiff

Date: April, 4 , 2012

Mario Gonzales, Plaintiff (Co)

Date: April, 4 , 2012

Anthony Bray, Plaintiff (co)

Date: April ( 4th, 2012

Vicent Alvarez, Plaintiff (Co)

Date: Apr. / 474, 2012

Leonel Guzman, Plaintiff (Co)

Date: 4/4/ , 2012

*Co indicates co-plaintiffs.

27

Jorge Ornelas #P-37370
Avenal State Prison
P.O. Box 900-F650-22-5-up
Avenal, CA. 93204

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

JORGE ORNELAS et. al.,
    Plaintiffs
    v.
KATHLEEN DICKINSON et. al.,
    Defendants

Case No
EXHIBITS (A-D) IN
SUPPORT OF COMPLAINT

EXHIBITS

EXHIBIT
"A"

STATE OF CALIFORNIA
CDCR 3022-B (REV. 07/07)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# PROGRAM STATUS REPORT
## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

*Describe only this reporting periods specific Plan of Operation*

| INSTITUTION | EFFECTIVE DATE OF PLAN | |
|---|---|---|
| AVENAL STATE PRISON | February 8, 2008 @ 0900 hours | ASP-FA6-08-02-0033 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☒ INITIAL | ☐ UPDATE | | ☐ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| AREA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| ☐ INSTITUTION: | ☒ ALL | ☐ BATTERY |
| ☒ FACILITY: Six | ☐ BLACK | ☐ DEATH |
| ☒ HOUSING UNIT: ALL | ☐ WHITE | ☒ RIOT / DISTURBANCE |
| ☐ VOCATION: | ☐ HISPANIC | ☐ GROUPING |
| ☐ EDUCATION: | ☐ OTHER | ☐ OTHER |
| ☐ OTHER: | ☐ | ☐ |

| MOVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☐ NORMAL | ☐ NORMAL | ☐ NORMAL |
| | ☒ CRITICAL WORKERS ONLY (PIA | |
| ☒ ESCORT ALL MOVEMENT | laundry/Egg only non-Hispanics) | ☒ NO DAYROOM ACTIVITIES |
| ☐ UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☒ CULINARY (non-Hispanics) | ☐ MODIFIED: |
| ☒ CONTROLLED MOVEMENT | ☐ CLERKS | **RECREATION** |
| ☐ OTHER: | ☐ VOCATION/EDUCATION | ☐ NORMAL |
| | ☐ CANTEEN | ☒ NO RECREATIONAL ACTIVITIES |
| **FEEDING** | ☐ CLOTHING ROOM | ☐ MODIFIED: |
| ☐ NORMAL | ☐ RESTRICTED WORK PROGRAM | |
| ☐ CELL FEEDING | ☐ PORTERS | **CANTEEN** |
| ☒ CONTROLLED FEEDING IN DINING ROOM | | |
| effective 02/09/08 | ☐ NO INMATE WORKERS | ☐ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | **SHOWERS** | ☒ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☐ NORMAL | ☐ MODIFIED: |
| ☐ TIER AT A TIME | ☐ ESCORTED | |
| ☒ HOUSING UNIT SECTION AT A TIME | ☐ ONE INMATE PER SHOWER – OWN TIER | **PACKAGES** |
| ☐ SACK MEAL BREAKFAST | ☐ CELL PARTNERS TOGETHER – OWN TIER | ☐ NORMAL |
| ☒ SACK MEAL LUNCH | ☒ DORM SHOWERING BY GROUP | ☒ NO PACKAGES |
| ☒ SACK MEAL DINNER (2/8/08 only) | ☒ CRITICAL WORKERS ONLY (daily) | ☐ MODIFIED: |
| **DUCATS** | ☐ NO SHOWERS | |
| ☐ NORMAL | **MEDICAL** | **PHONE CALLS** |
| ☐ MEDICAL DUCATS ONLY | ☐ NORMAL MEDICAL PROGRAM | ☐ NORMAL |
| ☐ CLASSIFICATION DUCATS | ☒ PRIORITY DUCATS ONLY | ☐ NO PHONE CALLS |
| | ☒ MEDICAL STAFF CONDUCT ROUNDS IN | |
| ☒ PRIORITY DUCATS ONLY (Medical/Dental) | UNITS | ☒ MODIFIED: No Hispanics |
| **VISITING** | ☐ INMATES ESCORTED TO SICK CALL | |
| ☒ NORMAL VISITING Blacks , Whites , Others only | ☒ EMERGENCY MEDICAL ONLY | **RELIGIOUS SERVICES** |
| ☐ NON-CONTACT ONLY | ☐ OTHER: | ☐ NORMAL |
| ☒ NO VISITING (for Hispanics) | **LEGAL LIBRARY** | ☒ NO RELIGIOUS SERVICES |
| ☐ OTHER: | ☐ NORMAL | ☐ MODIFIED: |
| | ☒ APPROVED COURT DEADLINES | |

REMARKS: ·On February 7, 2008 two separate riots occurred involving 47 Fresno Bulldogs inmates and 32 Southern Hispanics on Facility Six. As a result of the riot modified program was initiated. There will be two additional officers hired on both second and third watch and one additional officer on first watch. On 2-08-08 PIA Laundry/Egg production Critical Workers and Visiting porters/Law library workers, all non Hispanics will be released to their work assignments. Showers movement will controlled by allowing one dorm at a time access. Facility Six will remain on Modified Program pending searches and interviews to ascertain additional information into the cause. Doctors Line priority ducats will be escorted to the Facility Clinic to include inmates requiring insulin.

On 02/09/2008 Facility Six will conduct control feeding one building at a time

State of Emergency only: Postponement of nonessential administrative decisions, actions and the normal time requirements:
☐ Approved   ☐ Disapproved

| PREPARED BY: | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| J. DonDiego, Lt | 2-08-08 | James D. Hartley, Warden | Feb 8, 2008 |

EXHIBIT
"B"

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 3022-B (REV. 07/07)

# PROGRAM STATUS REPORT
## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

*Describe only this reporting periods specific Plan of Operation*

| INSTITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER· |
|---|---|---|
| Avenal State Prison | August 29, 2011 | ASP-FA6-08-09-0250 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| | ☐ INITIAL | ☒ UPDATE | ☐ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| AREA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| ☐ INSTITUTION: | ☐ ALL | ☐ BATTERY |
| ☒ FACILITY:  Six | ☐ BLACK | ☐ DEATH |
| ☒ HOUSING UNIT:  All | ☐ WHITE | ☒ RIOT / DISTURBANCE |
| ☒ VOCATION:  No Bulldogs or South Hisp Bulldogs separate from Southern Hispanic education | ☒ HISPANIC Bulldogs and Southern Hisp | ☐ GROUPING |
| ☒ EDUCATION:  hours | ☐ OTHER | ☐ OTHER |
| ☐ OTHER: | | |

### MOVEMENT
☒ NORMAL Blacks, Whites, Others & Non Affected Hispanics
☐ ESCORT ALL MOVEMENT
☐ UNCLOTHED BODY SEARCH PRIOR TO ESCORT
☒ CONTROLLED MOVEMENT  Bulldogs and South Hisp
☐ OTHER: _____

### FEEDING
☒ NORMAL 630, 640 & 650
☐ CELL FEEDING
☒ CONTROLLED FEEDING IN DINING ROOM ( 610 Fed Separately)
  ☐ HOUSING UNIT/DORM AT A TIME
  ☐ DORM POD AT A TIME
  ☐ TIER AT A TIME
  ☐ HOUSING UNIT SECTION AT A TIME
☐ SACK MEAL BREAKFAST
☐ SACK MEAL LUNCH
☐ SACK MEAL DINNER

### DUCATS
☒ NORMAL Blacks, Whites, Others & Non Affected Hispanics
☐ MEDICAL DUCAT'S ONLY
☐ CLASSIFICATION DUCATS
☒ PRIORITY DUCATS ONLY Bulldogs and Southern Hisp.

### VISITING
☒ NORMAL VISITING Non Affected Inmates
☐ NON-CONTACT ONLY
☒ NO VISITING (Modified Southern Hisp & Bulldog)
  Southern Hispanics will visit on Saturdays only and Bulldogs will visit on Sundays only / Family visits will return to normal effective March 05,
☐ OTHER:  2010.

### WORKERS
☒ NORMAL Non Affected Inmates
☐ CRITICAL WORKERS ONLY
☐ CULINARY
☐ CLERKS
☐ VOCATION/EDUCATION
☐ CANTEEN
☐ CLOTHING ROOM
☐ RESTRICTED WORK PROGRAM
☒ PORTERS Southern and Bulldog Porters work in their assigned Housing Units.
☒ NO INMATE WORKERS Bulldogs or South Hisp in Facility 6 Kitchen.

### SHOWERS
☒ NORMAL
☐ ESCORTED
☐ ONE INMATE PER SHOWER – OWN TIER
☐ CELL PARTNERS TOGETHER – OWN TIER
☐ DORM SHOWERING BY GROUP
☐ CRITICAL WORKERS ONLY
☐ NO SHOWERS

### MEDICAL
☒ NORMAL MEDICAL PROGRAM Non Affected Inmates
☐ PRIORITY DUCATS ONLY
☐ MTA CONDUCT ROUNDS IN UNITS
☐ INMATES ESCORTED TO SICK CALL
☐ EMERGENCY MEDICAL ONLY
☒ OTHER:  Bulldogs/South Hisp Separately

### LEGAL LIBRARY
☒ NORMAL (No Bulldogs/Southern Hisp)
☒ APPROVED COURT DEADLINES (Bulldogs and South Hisp, Paging Only)

### DAYROOM
☒ NORMAL
☐ NO DAYROOM ACTIVITIES
☐ MODIFIED:

### RECREATION
☒ NORMAL Non Affected Inmates
☐ NO RECREATIONAL ACTIVITIES
  Bulldogs separate from Southern Hispanic yard
☒ MODIFIED:  hours

### CANTEEN
☒ NORMAL
☐ NO CANTEEN
☐ MODIFIED: _____

### PACKAGES
☒ NORMAL
☐ NO PACKAGES
☐ MODIFIED:

### PHONE CALLS
☒ NORMAL
☐ NO PHONE CALLS
☐ MODIFIED:

### RELIGIOUS SERVICES
☒ NORMAL Non Affected Inmates
☐ NO RELIGIOUS SERVICES
☒ MODIFIED:  Bulldogs and Southern Hisp. During their yard hours

REMARKS: On September 1, 2008 a riot involving Southern Hispanic Inmates and Fresno Bulldogs erupted on Facility Six Yard. As a result of the on-going riots a modified program was initiated. Fresno Bulldogs are housed in Housing Units 610 separated from the Southern Hispanics.

On November 27, 2008 a separate riot erupted in the doorway of Housing Unit 640 involving Southern Hispanics and Fresno Bulldogs.

On March 18, 2009, Facility Six attempted to begin to return to normal program by allowing a small group of Southern Hispanics and Fresno Bulldogs on the morning recreational yard that had met an approved establish criteria of being over 45 years of age, signed a CDCR-128B agreement to program chrono and reside in buildings 640 or 650, however a riot erupted in front of Housing Unit 610. Facility Six resumed modified program for Southern Hispanic and Fresno Bulldog Inmates.

Despite staffs efforts to immediately resume dialogue with both groups after the March 18, 2009 riot; effective dialogue with both groups was not obtained until May 2009. Face to face interviews have been conducted with Inmate spokesmen from both groups who have stated that both Southern Hispanics and Bulldog inmates have reached a truce and wish to participate in program together on the exercise yard.

Based on the recent dialogue with Southern Hispanic and Bulldog Inmates, Facility Six will to begin to return to normal program on June 8, 2009 by allowing a small group of Southern Hispanics and Fresno Bulldogs on the morning recreational yard that have met an approved establish criteria. The criteria shall be those who have signed a CDCR-128B agreement to program chrono, been Identified as an inmate spokesman for the group and previously participated in dialogue with the rival disruptive group under staff supervision.

Based on success of the initial small group of Southern Hispanic and Fresno Bulldog inmates programming together for one week on the exercise yard without violence, a small group of additional inmates will be allowed to program on the exercise yard along with the first group effective June 16, 2009. The criteria shall be those who have signed a CDCR-128B agreement to program chrono, and previously participated in dialogue with the rival disruptive group under staff supervision.

On June 17, 2009, Facility Six attempted to continue a return to normal program by allowing a small group of Southern Hispanics and Fresno Bulldogs on the morning recreational yard that had met an approved established criteria of those who had signed a CDCR-128B agreement to program chrono, been identified as an inmate spokesman for the group and previously participated in dialogue with the rival disruptive group under staff supervision. However, despite staffs' efforts a riot erupted on the exercise yard between both groups which required the use of chemical agents to quell the disturbance. Initial verbal reports by staff are that the Fresno Bulldog Inmates initiated the violence. These verbal reports will be closely evaluated after all written reports are completed to determine the full circumstances. Facility Six has resumed modified program for Southern Hispanic and Fresno Bulldog Inmates.

Effective June 25, 2009, any inmates from the disruptive groups known as the Southern Hispanics or Fresno Bulldogs who are removed from Facility 6 for disciplinary reasons and/or pending investigation into any issue which may lead to a CDCR-115 Rules Violation Report and placed into Administrative Segregation will have the same privileges which were modified on Facility 6 also modified while in Administrative Segregation. Specifically, while housed in Ad-Seg there will be a no visiting, canteen, or packages of any type afforded to the aforementioned groups of inmates.

As of July 7, 2009, all written reports and evidence pertaining to the riot which occurred on June 17, 2009 has been evaluated. Additional meetings have occurred between staff and both factions separate from each other. Information from the interviews and meetings indicate the Southern Hispanics remain sincere in there request to have program on the facility without violence. Fresno Bulldog inmates are non-declaive and remain without any specific inmates who are willing to speak for the group. The totality of the circumstances which include staff written reports, inmate interviews and meetings all support the initial verbal reports that Fresno Bulldog inmates initiated the violence against Southern Hispanics on the date of the riot. Based on the aforementioned, effective July 14, 2009, Southern Hispanic Inmates housed on Facility 6 will be afforded Saturday and Sunday Visiting privileges, Canteen, and Packages. Southern Hispanics will also be allowed to return to work assignments, excluding Vocations and Education located on the Facility 6 Plaza areas. Assigned Southern Hispanics will be allowed to work PIA Laundry. Additionally, there will be no Southern Hispanic Facility 6 kitchen workers, or Southern Hispanic Minimum B workers utilized. There will be no change to the current exercise yard schedule. The restriction of privileges while in Ad-Seg which was imposed effective June 25, 2009 will still remain in effect.

On Friday October 2, 2009 a Southern Hispanic perceived by facility staff as very influential amongst Southern Hispanics is battered by other Southern Hispanics. Southern Hispanics have since become reluctant to speak with staff regarding said battery or normal programming with the Fresno Bulldogs. On going efforts to dialogue with the Southern Hispanics continues as Fresno Bulldogs await next scheduled meet.

On Wednesday October 14, 2009, an unlock conference call with Mr. Suble was held. Per direction of Mr. Subia, Southern Hispanics to resume normal program. With the exception of culinary work assignments and recreational activities during Fresno Bulldog yard, Southern Hispanics will resume normal program. Additionally, rival factions to be escorted to ducated destinations during opposing rival faction yard.

On Monday October 19th, 2009, both factions were addressed regarding the return to normal programming for Southern Hispanics and a meet between Southern Hispanics and Fresno Bulldogs was scheduled by facility staff, however although Fresno Bulldogs exited their housing unit to attend the meet, the meet did not occur as Southern Hispanics refused to exit their unit to attend the meet. As a result, Southern Hispanic privileges returned to status prior to conference call of October 14, 2009; with Mr. Subia.

On Wednesday October 21, 2009, Canteen is opened to Fresno Bulldogs and to remain open in good faith for willingness to continue to dialogue with staff and Southern Hispanics relative to return to normal programming.



fective Wednesday February 3, 2010, Fresno Bulldog faction inmates will be allowed to resume receiving packages in accordance with institutional/Departmental policy and procedures.

Effective Sunday February 28, 2010, Southern Hispanic faction inmates will no longer be allowed to visit on Sundays. As such, Southern Hispanic faction inmates will only be allowed to visit on Saturdays and Fresno Bulldog faction inmates will be allowed to resume visiting privileges and will be allowed to visit on Sundays only in accordance with Institutional/Departmental policy and procedures.

Effective Friday March 5, 2010, Southern Hispanic and Fresno Bulldog faction inmates will be allowed to resume Family Visiting privileges in accordance with Institutional/Departmental policy and procedures.

Effective October 13, 2010, there is no change to the Modified Program.

On October 27, 2010 a Modified Program Conference Call with the Associate Directors Office occurred. During the Modified Program Conference Call it was discussed that a Warden's Advisory Group (WAG) would be established to discuss future housing needs for members/associates of disruptive groups who remain on modified program.

On November 10, 2010 a Modified Program Conference Call with the Associate Directors Office occurred. During the Modified Program Conference Call there were no changes implemented to the current modified program in effect.

On November 24, 2010 a Modified Program Conference Call with the Associate Directors Office occurred. During the Modified Program Conference Call there were no changes implemented to the current modified program in effect.

On December 22, 2010 a Modified Program Conference Call with the Associate Directors Office occurred. During the Modified Program Conference Call there were no changes implemented to the current modified program in effect.

On Wednesday, January 5, 2011 a Modified Program Conference Call with the Associate Directors Office occurred. During the Modified Program Conference Call there were no changes implemented to the current modified program in effect.

On Wednesday, January 19, 2011 a Modified Program Conference Call with the Associate Directors Office occurred. During the conference call it was discussed that a follow-up discussion between education and custody was held and the feasibility of allowing the Bulldogs and Southern Hispanics to participate in education programs on a split schedule is feasible. A follow-up discussion with medical staff to determine their needs and concerns regarding emergency and non-emergency medical movement in the Plaza area will be held. During the Conference Call, no changes were implemented to the current modified program in effect.

On Wednesday, February 2, 2011 a Modified Program Conference Call with the Associate Directors Office occurred. During the conference call it was discussed that a follow-up discussion between medical and custody was held regarding the safe emergency medical movement of the Bulldogs and Southern Hispanics during the education program hours. During the Conference Call it was determined the target date for Facility VI to implement the split Education Program for the Bulldog and Southern Hispanic inmates housed on Facility VI, is Monday, February 7, 2011. A meeting with AW, R. Koelewyn, Medical and AW, R. Ndoh, Complex "C", was held on February 2, 2011, to discuss medical appointments through the Plaza Area during programming hours.

On Wednesday, March 2, 2011 a Modified Program Conference Call with the Associate Directors Office occurred. The split Education Program for the Bulldog and Southern Hispanic inmates on Facility VI was implemented on Monday, February 21, 2011. Southern Hispanics assigned to education participate in the morning and Bulldogs participate in the afternoon. These classes run concurrent with their respective yard times.

On Wednesday, March 16, 2011 a Modified Program Conference Call with Captain A. Chamberlin, General Population Levels II and III, for Associate Director (A) R. Barnes occurred. During the conference call it was discussed that a potential for violence continues to exist between both factions. During the Conference Call, no changes were implemented to the current modified program in effect.

On Wednesday, March 30, 2011 a Modified Program Conference Call with Kathleen Dickinson, Associate Director (A), General Population Levels II and III, R. Wood, Associate Governmental Program Analyst and Captain A. Chamberlin, occurred. During the conference call it was discussed that on going interviews of Facility VI inmates indicate that violence remains likely between both factions. During the Conference Call, no changes were implemented to the current modified program in effect.

On Wednesday, April 13, 2011 a Modified Program Conference Call with Kathleen Dickinson, Associate Director (A), General Population Levels II and III, R. Wood, Associate Governmental Program Analyst and Captain A. Chamberlin, occurred. During the conference call it was discussed that there are two (2) Southern Hispanic inmates assigned to the PIA Laundry during the Fresno Bulldog education hours and that both factions have agreed that there would be no issues in the Facility VI Plaza. Facility VI Staff will continue to monitor the situation and any further assignments to the plaza area programs. On going interviews of Facility VI inmates indicate that violence remains likely between both factions should they be housed together or share the same yard hours. During the Conference Call, no changes were implemented to the current modified program in effect.

On Wednesday, April 27, 2011 a Modified Program Conference Call with Kathleen Dickinson, Associate Director (A); General Population Levels II and III, R. Wood, Associate Governmental Program Analyst and Captain A. Chamberlin, occurred. At the completion of the conference call, no changes were implemented to the current modified program in effect.

On Wednesday, May 11, 2011 a Modified Program Conference Call with Kathleen Dickinson, Associate Director (A), General Population Levels II and III, R. Wood, Associate Governmental Program Analyst and Captain A. Chamberlin, occurred. During the call the searches were discussed that occurred on Wednesday May 11, 2011, during searches of 610, ISU with the help of dogs, found contraband hidden in a common area of building 610, which is a Bulldog housing area. The contraband found consisted of 2 large shanks, 2 cell phones, heroin and other minor contraband. At the completion of the conference call, no changes were implemented to the current modified program in effect.

On Friday May 27, 2011a Modified Program Conference with Kathleen Dickinson, Associate Director (A), General Population Levels II and III, occurred in the Warden's office. During the conference the need to determine the plausibility of a reintegrated yard was emphasized. Discussed was the need to identify the Southern Hispanics and Fresno Bulldogs who are able to program in a reintegrated yard. At the completion of the conference call, no changes were implemented to the current modified program in effect.

On Wednesday June 8, 2011 a Modified Program Conference with Kathleen Dickinson, Associate Director (A), General Population Levels II and III, occurred in the Chief Deputy Warden's office. During the conference the need to determine the plausibility of a reintegrated yard was emphasized. Discussed was the plan to complete interviews of all Bulldog and Southern Hispanic Inmates within a 30 day period. Facility VI will be documenting Bulldog and Southern Hispanic Inmates willingness or unwillingness to program / reintegrate with the opposite group on a CDC 128-B. Facility VI will also document all newly arrived Bulldog and Southern Hispanic Inmates willingness or unwillingness regarding integration on the inmates CDC 128-G. At the completion of the conference call, no changes were Implemented to the current modified program in effect.

On Wednesday June 22, 2011 a Modified Program Conference with Kathleen Dickinson, Associate Director (A), General Population Levels II and III, occurred in the Chief Deputy Warden's office. The progress of completing the "Willingness to Program " interviews and chronos with the Southern Hispanics and Fresno Bulldogs along with the steps toward reintegration of the Southern Hispanics and Fresno Bulldogs on Facility VI were discussed. The impact of the Fresno Bulldog being move from Facility I to Facility VI after the Facility I riots was discussed along with the need to vacate all Southern Hispanics from Housing Unit 630 to create more bed space for the Fresno Bulldogs being move to Facility VI. At the completion of the conference call, no changes were implemented to the current modified program in effect.

On Wednesday July 6, 2011 a Modified Program Conference with R. Hill, Associate Director (A), General Population Levels II and III, occurred in the Warden's office. The completion of the "Willingness to Program " interviews and chronos with the Southern Hispanics and Fresno Bulldogs along with the steps toward reintegration of the Southern Hispanics and Fresno Bulldogs on Facility VI were discussed. All Southern Hispanics and Fresno Bulldogs signed a CDC 128-B indicating that they would program with the each other. Facility VI has completed moving the Southern Hispanics from Housing Unit 630 to Housing Units 640 and 650 in preparation to integrate Bulldog and Southern Hispanic inmates who agree to program together. A future date will be determined when the first programming Southern Hispanics and Fresno Bulldogs will be housed together in Housing Unit 630. At the completion of the conference call, no changes were implemented to the current modified program in effect.

On Wednesday July 20, 2011 a Modified Program Conference Call with Kathleen Dickinson, Associate Director (A), General Population Levels II and III, occurred in the Warden's office. The completion of the "Willingness to Program" interviews and chronos with the Southern Hispanics and Fresno Bulldogs along with the steps toward reintegration of the Southern Hispanics and Fresno Bulldogs on Facility VI were discussed. Facility VI Is in the process of completing an unlock plan, A future date will be determined when the first programming Southern Hispanics and Fresno Bulldogs will be housed together in Housing Unit 630, At the completion of the conference call, no changes were implemented to the current modified program in effect.

On Wednesday, August 3, 2011 a Modified Program Conference Call with Kathleen Dickinson, Associate Director (A), General Population Levels II and III, occurred in the Warden's office. Discussed were the future programming needs to be established should reintegration efforts be successful, such as; yard hours, canteen schedules, education, vocation visiting etc. A future date will be determined when the first programming Southern Hispanics and Fresno Bulldogs will be housed together in Housing Unit 630. At the completion of the conference call, no changes were implemented to the current modified program in effect.

As of Monday, August 29, 2011 there are no changes to current modified program. There will be no unlock conferences until further notice.

| PREPARED BY: | DATE | NAME / SIGNATURE (PRINT) | DATE |
|---|---|---|---|
| G. STAGGINI, FACILITY CAPTAIN | 8/29/11 | JAMES D. HARTLEY | 9-30-11 |

EXHIBIT
"C"

By my signature below, I am acknowledging that Facility VI at Avenal State Prison is a programming yard. I further acknowledge that I associate with the Southern Hispanics, I also understand that all inmates are expected to program with all factions. Being aware of these expectations I am willing/not willing to program with all factions, specifically the Fresno Bulldogs. By refusing to participate I am aware that I may be subject to disciplinary action pursuant to CCR 3005(c). COMPAS core assessment S's relationship and Lifestyle was rated HIGHLY PROBABLE: CSRA Score: 2. I ntegrated Housing Code: RE

Original: C-File
Copy: Writer
Inmate

Inmate Signature

Staff Witness

DATE: 10/27/11

WILLINGNESS TO PROGRAM

GENERAL CHRONO

EXHIBIT
"D"

**OFFICE OF APPEALS**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



March 6, 2012

ORNELAS, JORGE, P37370
Avenal State Prison
P.O. Box 8
Avenal, CA  93204

RE: TLR# 1109222    ASP-11-01322    STAFF COMPLAINTS

The Office of Appeals, California Department of Corrections and Rehabilitation (CDCR) acts as the third level of review as established in California Code of Regulations (CCR) Title 15, Article 8. The Office of Appeals examines and responds to inmate and parolee appeals, after the institution or parole region has responded at the Second Level of Appeal.

It has been determined that you are attempting to submit an appeal that has been previously cancelled. Pursuant to CCR 3084.4 you are advised that this is considered misuse or abuse of the appeals process. Repeated violations may lead to your being placed on appeal restriction as described in CCR 3084.4(g).

In addition, for future reference, staff complaints must be filed individually. Staff complaints will not be accepted as group appeals.

D. FOSTON, Chief
Office of Appeals

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

****PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE****

State of California

ATTACHMENT E-3
Revised 12/07

# Memorandum

Date : December 29, 2011

To : Ornelas P-37370, F650-2022005U
et. al.

Subject: **STAFF COMPLAINT RESPONSE - APPEAL #ASP-M-11-01322**

**APPEAL ISSUE:** The Southern Hispanic inmates alleged that Correctional Sergeant B. Riddle and Correctional Officer J. Robles threatened them with disciplinary action if they did not sign the "Willingness to Program" chronos (dated 10/27/2011); regarding the Southern Hispanics willingness to program with the Fresno Bulldogs. Inmate Ornelas P-37370 is the preparer of this group appeal.

**DETERMINATION OF ISSUE:** A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal has been handled as follows:

☒ PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
☐ REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (OIA).

**SUMMARY FOR APPEAL INQUIRY:**
You were interviewed on December 16, 2011 by M. Marmolejo, Correctional Lieutenant and you reiterated the information from the CDCR 602 Inmate Appeal/Staff Complaint. You further indicated that you understood that the issues being addressed during this interview was the specific allegation that Sgt. Riddle and Officer Robles threatened the Southern Hispanic Inmates with disciplinary action if they refused to sign the "Willingness to Program" chrono. Subsequent to this interview, on December 29, 2011, you were presented with the CDC 1858, Rights and Responsibilities Statement. At this time you shared with me that you were not trying to blame any particular staff members and that though you initially signed the 1858 you elected to refuse because you are trying to get this matter on record for future court action.

**CHOOSE ONE:**
☒ A Confidential Inquiry has been conducted. The following witnesses were questioned: DeLeon C-63149, Solario H-83069 and Briones H-36347. The following information was reviewed as a result of your allegations of staff misconduct: The CDCR 602 and the "Willingness to Program" chronos dated 10/27/2011.

☐ This matter has been referred to the Office of Internal Affairs for follow-up and a possible investigation. If investigated, upon completion of that investigation you will be notified as to whether the allegations were SUSTAINED, NOT SUSTAINED, UNFOUNDED, EXONERATED or that NO FINDING was possible. In the event that the matter is not investigated, but returned by OIA to the institution or region to conduct a Confidential Inquiry, you will be notified upon the completion of that inquiry as to whether it was determined that staff violated, or did not violate policy.

**FINDINGS FOR AN APPEAL INQUIRY:**

Your appeal is CANCELLED at the ☐ First level ☒ Second level: Due to appellant's refusal to sign the CDC 1858, Rights and Responsibility Statement, this matter has been CANCELLED.

☒ An inquiry into your allegation has been conducted.

☐ An investigation is being conducted by the Office of Internal Affairs

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, the details of any inquiry will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. However, you have the right to be notified if after a review of your allegations, it is determined that staff violated CDCR policy. In this case:

☐ The inquiry is not yet complete

☒ The inquiry is complete.  Staff did not violate CDCR policy.

The appellant is advised that this issue may not be submitted for a Director's Level of Review, due to appellant's refusal to sign the CDC 1858, Rights and Responsibility Statement.

JAMES D. HARTLEY
Warden
Avenal State Prison

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 08/09)

**IAB USE ONLY**

1109222

P37370

Institution/Parole Region: ___ Log #: ___ Category: ___
ASPM   II-01392
FOR STAFF USE ONLY

You may appeal any Calif. ~~...~~ (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your ~~...~~ ~~... ... .... ... .... ...... ....... method~~ of departmental review/remedy available. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.
FACE Adam/state STAFF 567 Ridd
Appeal is subject to rejection if one row of text per line is exceeded. Go Rinkles.   **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Ornelas, Jorge | P-37370 | F650-22-5 up | N/A |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.): Violation of Southern

Hispanics Eight and Fourteenth Amendment by F6 yard officials

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): This group appeal is

being filed on behalf of F-6.6.P Southern hispanics in A.S.P, Title 15

Section 3084.2 (h) 1) violation of southern hispanics Eight

Amendment rights by F6 administration through orchestrating

B. Action requested (If you need more space, use Section B of the CDCR 602-A): That southern hispanics

in F6 Facility be removed from F6 yard and be re-housed to A1 and E5

yard general population in a timely fashion. 2) That the privileges

taken On November 9 2011 from Southern hispanics housed in F650 -

Supporting Documents: Refer to CCR 3084.3.

☑ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

Affidavit from inmate:

Albert De Leon # C-63149

☐ No, I have not attached any supporting documents. Reason:

Inmate/Parolee Signature: _J. Ornelas_   Date Submitted: 12-2-2011

☐ By placing my initials in this box, I waive my right to receive an interview.

RECEIVED
DEC 5 2011
ASP APPEALS OFFICE

RECEIVED
DEC 06 2011
ASP APPEALS OFFICE

INMATE APPEALS BRANCH

RECEIVED
JAN 25 2012

---

**C. First Level - Staff Use Only**

Staff – Check One: Is CDCR 602-A Attached?   ☐ Yes   ☐ No

This appeal has been:
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter) Date: _____
☐ Accepted at the First Level of Review.

Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: _____

First Level Responder: Complete a First Level response. Include interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _____ Interview Location: _____

Your appeal issue is:   ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____
See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: _____ (Print Name)   Title: _____ Signature: _____ Date completed: _____

Reviewer: _____ (Print Name)   Title: _____ Signature: _____

Date received by AC: _____

| AC Use Only |
|---|
| Date mailed/delivered to appellant ___ / ___ / ___ |

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL
CDCR 602 (REV. 08/09)

Case 1:12-cv-00709-AWI-MJS   Document 1   Filed 04/06/12   Page 43 of 57

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 2

**D. If you are dissatisfied with the First Level response,** explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

BYPASS

Inmate/Parolee Signature: _____     Date Submitted : _____

**E. Second Level - Staff Use Only**     Staff – Check One: Is CDCR 602-A Attached?  ☒ Yes   ☐ No

This appeal has been:

☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)
☒ Accepted at the Second Level of Review
Assigned to: _____CA-3_____ Title: _AW_ Date Assigned: _12/8/11_ Date Due: _1/24/12_

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: _12/16/11_     Interview Location: _ASP-FAC.F Program_
Your appeal issue is:  ☐ Granted   ☒ Granted in Part   ☐ Denied   ☒ Other: _Cancelled_

See attached letter. If dissatisfied with Second Level response, complete Section F below.
Interviewer: _M. Marmolejo_ (Print Name) Title: _LT._ Signature: _____ Date completed: _12/29/11_
Reviewer: _K. Davis_ (Print Name) Title: _CW_ Signature: _____

Date received by AC: _1/9/12_

AC Use Only
Date mailed/delivered to appellant _1/9/12_

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

The appeals Coordinator ~~~~~ has misunderstand the group 602 brought by southern hispanics housed in ASP F-6. Most of the issues in the group 602 are being ignored. As I stated to Lt. Marmolejo that I did not want to sign the CDC 1858 Rights and Responsibility statement form if it was only singleing out two particular officers. The group 602 was intended against the F-6

Inmate/Parolee Signature: _L A Ornelas_     Date Submitted: _1 – 19 – 2012_

**G. Third Level - Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _MAR - 6 2012_ Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)   Date: _____
☐ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____
See attached Third Level response.

Third Level Use Only
Date mailed/delivered to appellant ____ /____ /____

**Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____
_____
_____
_____

_____ Inmate/Parolee Signature: _____ Date: _____
Print Staff Name: _____ Title: _____ Signature: _____ Date: _____

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)                                                                                          Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | ASem | 11-01322 | 7 |
| | | **FOR STAFF USE ONLY** | |

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Ornelas, Jorge | P-37370 | F650-72-5" | N/A |

A. Continuation of CDCR 602, Section A only (Explain your issue): gladiator style fights for finan-
cial gain. 2) violating the Fourteenth Amendment by discriminating southern
hispanics rights imposing arbitrary Policies and disciplinary actions. On
October 28, 2011 all southern hispanics were ordered to the podium by C/o
Robles and Sgt Riddle to sign a general Chrono Stating, "Refusing to sign will
result in disciplinary actions" Subjecting southerners with a catch-22, a
practice which makes one a victim of its own provisions no matter the cause.
On November 7, 2011 Ms Ralyn (inner of OMBUDSMAN came and interviewed
inmate Albert De Leon H-63149 concerning the intergration of southern
hispanics and Fresno Bulldogs. (see Supporting documents). On November 9, 2011
F6 prison officials executed the intergration of 4 southerners and 4 Fresno Bull
dogs in building F630 violation of the Inmate Housing Policy (IHP) (see
title 15 section 3269.1 and 3269.1(a)) On November 9, 2011 an incident occured
between 4 southerners and 4 Fresno Bulldogs. They southerners were forced into
ad-seg while the 4 Fresno Bulldogs were sent back into F630 to program. On
this same day non-participating southern hispanics were punished losing
all priviledges. This is clearly a violation of federal guaranteed rights, therefore
bringing a class action law suit under title 42 of the U.S. code, section 1983
against F6 prison officials and administration.

Inmate/Parolee Signature: _J A Ornelas_          Date Submitted: 12-2-2011

INMATE APPEALS BRANCH

RECEIVED

JAN 25 2012

B. Continuation of CDCR 602, Section B only (Action requested): be re instated untill the completion of
re housing of southern hispanics to A1 and E5 facility. 3) Any Continuance of
federal guaranteed rights violation will result in further civil and criminal
liabilities 4) No reprisals shall be taken against any inmates involved
in this group class action appeal.

Inmate/Parolee Signature: _J A Ornelez_          Date Submitted: 12-2-2011

STATE OF CALIFORNIA                                                DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)                                                                                        Side 2

---

**D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):** _____

_(blank lined section)_

Inmate/Parolee Signature: _____        Date Submitted: _____

---

**F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):** administration for endangering the well being of southern Hispanics and Fresno Bulldogs by orchestrating Corcoran style fights, Justifying bias arbitrary policies and practices by forcing to intergrade both rival groups in one building and having both hispanic groups on modified program for almost 4 years. This is a clear racial prejudice bigotry and abuse of power. Captain Biaggini and Warden James D Hartley are condoning a code of silence because they are the main officials who are enforcing the intergration of both groups and allowing for inmates to get hurt. A memorandum issued on February 17, 2004 by the acting director Richard Kimmer implemented a "zero tolerance" policy concerning the code of silence. Also, condoning a code of silence is the correctional officers who work here in ASP F6 because they refuse to say or stop the ongoing problem with both hispanic groups. The group 602 is self explanitory regarding the issues being brought forward

Note: On 17-28-11 there was an incident between both groups, Fresno Bulldogs being the aggressors which this administration later covered up and labeled the incident as mutual combat

Inmate/Parolee Signature: J.A. Ornelas        Date Submitted: 1-19-2012

| | IAB USE ONLY | Institution/Parole Region: | · Log #: | | Category: |
|---|---|---|---|---|---|
| | | | **FOR STAFF USE ONLY** | | |

This is a group appeal signature attachment sheet. Attach it to your group CDCR 602. You are to legibly print your name. number. assignment and housing, then sign and date the form. By signing. you are agreeing to the issue and action requested: and you acknowledge that this appeal counts towards the allowable number of appeals in the period in which it is filed.

**PRIMARY APPELLANT**        WRITE, PRINT. or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number | Assignment: | Unit/Cell # | Signature | Date |
|---|---|---|---|---|---|
| Ornelas, Jorge | P-37370 | N/A | F650 22-5up | Ornelas | 12-2-11 |

A. Summarize the specific issue that you are appealing as identified in the attached CDCR 602: Violation of Southern hispanics Eight and fourteenth Amendment, by orchestrating gladiator style fights and sentinuing a program in F6 for financial gain by prison officials and administration as of November 9, 2011

B. Summarize the action requested: Re house southern hispanics to A1 and E6 yard. 2) Reinstate privileges taken us of November 9, 2011 untill completion of rehousing of southern hispanics to A1 and E6 yard. 3) No reprisals against any inmate involved in appeal

**NOTE:** I, the undersigned, agree that the facts presented in this appeal are true. I agree with the issue presented and I am requesting the action indicated. In the event the Primary Appellant transfers or elects to withdraw from the appeal, I understand that I may become the primary appellant for purposes of processing the group appeal.

| CDC Number | Name | Assignment | Unit/Cell # | Signature | Date |
|---|---|---|---|---|---|
| H-83069 | Manuel Solorio | N/A | F650-24-2up | Manuel Solorio | 12/2/11 |
| H36347 | Gilbert Briones | SATS CREW | 650-2-2L | Gilbert Briones | 12-2-11 |
| C-63149 | Albert De Leon | N/A | F650-2-14-4 | Albert DeLeon | 12/2/11 |
| G-08610 | MICHAEL WHEELER | N/A | F650 2-21-1 | Michael Wheeler | 12/2/11 |
| V-00681 | David Villarreal | N/A | F-656 2-14-4 | David Villarreal | 12/2/11 |
| P-70875 | GREG CESENA | N/A | F-650 2-14-5 | | 12-21-11 |
| J-11990 | A CASTILLO | N/A | F-650 2-14-5 | | 12-2-11 |
| T-86697 | MARI, JUAN | N/A | F-650 2-14-300 | | 12-2-11 |
| E28771 | RICHARD LOYA | BLDG PTR | F-650 2-01-L | | 12-2-11 |
| F27252 | Alfredo Avila | N/A | F-650 2-25 | | 12-2-11 |
| H-73376 | MARTINEZ JUAN | N/A | F650 2-04U | Martinez Juan | 12-2-11 |
| K99331 | JOSE GARCIA | N/A | F-650 2-2up | | 12-2-11 |

RECEIVED

| | IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|---|
| | | | **FOR STAFF USE ONLY** | |

This is a group appeal signature attachment sheet. Attach it to your group CDCR 602. You are to legibly print your name, number, assignment and housing, then sign and date the form. By signing, you are agreeing to the issue and action requested; and you acknowledge that this appeal counts towards the allowable number of appeals in the period in which it is filed.

**PRIMARY APPELLANT**                                    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number: | Assignment | Unit/Cell # | Signature | Date |
|---|---|---|---|---|---|
| Ornelas, Jorge | P-37370 | N/A | F-650 22-5up | SPA COrnelez | 12-2-2011 |

A. Summarize the specific issue that you are appealing as identified in the attached CDCR 602: violation of Southern hispanics Eight and Fourteenth Amendment By orchestrating gladiator style fights and continuing a program in E6 for financial gain by prison officials and administrativ as of November 9, 2011

B. Summarize the action requested: Re house southern hispanics to A1 and E6 yard. 2) Re-instate privileges taken as of November 9, 2011 untill completion of rehousing of southern hispanics to A1 and E6 yard. 3) No reprisals against any inmate involved in appeal

NOTE: I, the undersigned, agree that the facts presented in this appeal are true. I agree with the issue presented and I am requesting the action indicated. In the event the Primary Appellant transfers or elects to withdraw from the appeal, I understand that I may become the primary appellant for purposes of processing the group appeal.

| CDC Number | Name | Assignment | Unit/Cell # | Signature | Date |
|---|---|---|---|---|---|
| K59811 | Manuel Morales | NONE | 659/19 | Manuel Morale | 12-2-11 |
| A67563 | RIVERAS CESAR | NONE | F650 20-3up | | 12-2-11 |
| T84138 | Danny Vasquez | NONE | F-650 20-3 | | 12-2-11 |
| V.91617 | Jorge Hernandez | N/A | F650 24-4up | | 12-2-11 |
| J-77468 | JUAN RAMIREZ | N/A | F-650 13-14up | Juan Ramirez | 12-2-2011 |
| H70587 | Robert Carranza | N/A | F650 14-5up | | 12-2-2011 |
| D-69451 | Gustavo Lopez | N/A | F-650 | Gustavo Lopez | 12-2-2011 |
| E78640 | MACIAS Ruben | N/A | F650 2-1-up | Ruben Macias | 12-2-11 |
| E42203 | Alvarez Ricardo | N/A | F650 24-44 | Alvarez Ricardo | 12-2-11 |
| D-84206 | Arzaga Javier | N/A | F650 15-05L | Javier Arzaga | 12-2-11 |
| AF-6759 | ISRAEL MARTINEZ | N/A | 6650 - 3up | | 12-2-11 |
| V-90589 | MIGUEL ESCALERA | N/A | 650 4-3up | Miguel Escalera | 12-2-11 |

RECEIVED

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE GROUP APPEAL**                                       Page No. __3__ of __5__
CDCR 602-G (08/09)

| IAB USE ONLY | Institution/Parole Region: | Log.#: | Category: |
|---|---|---|---|
| | | | |
| | **FOR STAFF USE ONLY** | | |

This is a group appeal signature attachment sheet. Attach it to your group CDCR 602. You are to legibly print your name, number, assignment and housing, then sign and date the form. By signing, you are agreeing to the issue and action requested; and you acknowledge that this appeal counts towards the allowable number of appeals in the period in which it is filed.

**PRIMARY APPELLANT**                                    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number: | Assignment: | Unit/Cell # | Signature | Date |
|---|---|---|---|---|---|
| Ornelas, Jorge | P-37370 | N/A | F650 22-5 | _signature_ | 12-2-11 |

A. Summarize the specific issue that you are appealing as identified in the attached CDCR 602: violation of Southern hispanics Eighth and Fourteenth Amendment By orchestrating gladiator style fights and continuing a program in F6 for financial gain by prison officials and administration as of November 9, 2011

B. Summarize the action requested: Rehouse southern hispanics to A1 and E5 yard. 2) Reinstate privileges taken as of November 9 2011 until completion of rehousing of southern hispanics to A1 and E5 yard 3) No reprisals against any inmate involved in appeal

**NOTE:** I, the undersigned, agree that the facts presented in this appeal are true. I agree with the issue presented and I am requesting the action indicated. In the event the Primary Appellant transfers or elects to withdraw from the appeal, I understand that I may become the primary appellant for purposes of processing the group appeal.

| CDC Number | Name | Assignment | Unit/Cell # | Signature | Date |
|---|---|---|---|---|---|
| H37902 | Danny Villanueva | N/A | F650 2-13-5 | Danny Villanueva | 12-2-11 |
| AC9138 | URIAS, Rudy | N/A | F650 12 | _signature_ | 12-2-11 |
| A02059 | Emilio Robles | N/A | F650 2-20 | _signature_ | 12-2-11 |
| P-17786 | William Barios | N/A | F650 13-20P | Barios | 12-2-11 |
| P-18106 | Nicholas Osorio | N/A | F650 13-04 | _signature_ | 12-2-11 |
| AH-5383 | Edgar Castaneda | N/A | P650 1-4U | Edgar Castaneda | 12-2-11 |
| J73835 | ENRIQUE DUARTE | Porter | 650 650-28L | _signature_ | 12-2-11 |
| K87502 | William LUCERO | UNASS | F650 622-C6L | William Lucero | 12-02-11 |
| H5385 | CRAIG D. HILBUN | N/A | 650 22-49L | Craig D. Hilbun | 12-2-11 |
| E22372 | ALEGRIA, Antonio | | 656 2-5L | Alegria | 12-2-11 |
| J90040 | SIERRO, Gilbert | N/A | 650 15-5L | Gilbert Tun | 12-2-11 |
| F66263 | Alberto Gonzalez | N/A | 650 2-01-P | Alberto Gonzalez | 12-02-11 |

RECEIVED

STATE OF CALIFORNIA
**INMATE/PAROLEE GROUP APPEAL**
CDCR 602-G (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page No. __4__ of __5__

| IAB USE ONLY | Institution/Parole Region: · Log #: · · Category: |
|---|---|
| | |
| | *FOR STAFF USE ONLY* |

This is a group appeal signature attachment sheet. Attach it to your group CDCR 602. You are to legibly print your name, number, assignment and housing, then sign and date the form. By signing, you are agreeing to the issue and action requested; and you acknowledge that this appeal counts towards the allowable number of appeals in the period in which it is filed.

**PRIMARY APPELLANT**                                    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number | Assignment: | Unit/Cell # | Signature | Date |
|---|---|---|---|---|---|
| Ornelas, Jorge | P-37370 | N/A | FC50 12-540 | A. Ornelez | 12-2-11 |

A. Summarize the specific issue that you are appealing as identified in the attached CDCR 602: Violation of Southern hispanics Eight and Fourteenth Amendment. By orchestrating gladiator style fights and continuing a program in E.G. for financial gain by prison officials and administration as of November 5, 2011

B. Summarize the action requested: Rehouse southern hispanics to A1 and E5 yard. 2) Re-instate privileges taken as of November 9 2011 until completion of (rehousing of southern hispanics to A1 and E5 yard 3) No reprisals against any inmate involved in appeal

NOTE:  I, the undersigned, agree that the facts presented in this appeal are true.  I agree with the issue presented and I am requesting the action indicated.  In the event the Primary Appellant transfers or elects to withdraw from the appeal, I understand that I may become the primary appellant for purposes of processing the group appeal.

| CDC Number | Name | Assignment | Unit/Cell # | Signature | Date |
|---|---|---|---|---|---|
| AC3348 | JUAN LUIS SANDOVAL | N/A | FL50- 10-5cp | | 12-2-11 |
| F62631 | JOSE VALADEZ | N/K | 9-94 Lon FL50 | Valach | 12-2-11 |
| AH8878 | DAVID VASQUEZ | N/A | 440? 050 | | 12-2-11 |
| V-47080 | RUIZ ELEAZAR | N/A | 10-60 | Eleazar | 12-2-11 |
| C-86891 | JESSE CHAVEZ | N/A | F-650 | | 12-2-11 |
| AH-1561 | Kevin Tello | N/A | 21-10P E-650 | Kevin tello | 12-2-11 |
| G45549 | D.E. Torre M. | N/A | 9-2 op F-650 | DC le Tave | 12-2-11 |
| C24796 | DAVID Montes Jr | N/A | 4-Low F-650 | Montes | 12/2/11 |
| AH-3384 | Andrade miguel | N/A | Unit/Cell # 5 up F-650 | andrade miguel | 12-2-11 |
| G-50623 | Matthew Ketencleg | N/A | 3-Low E-650 | M-H | 12-2-11 |
| AG-6130 | THOMAS VARGAS DANNI | N/A | Unit/Cell # 440W E-650 | Cray | 12-7-11 |
| J31234 | ROMIE ISZAVFRANCISCO | PORTER | 65 0-2 54P | | 12-2-11 |

RECEIVED

STATE OF CALIFORNIA
Case 1:12-cv-00709-AWI-MJS  Document 1  Filed 04/06/12  Page 50 of 57
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE GROUP APPEAL**
CDCR 602-G (08/09)
Page No. 5 of 5

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | | |
| | **FOR STAFF USE ONLY** | | |

This is a group appeal signature attachment sheet. Attach it to your group CDCR 602. You are to legibly print your name, number, assignment and housing, then sign and date the form. By signing, you are agreeing to the issue and action requested; and you acknowledge that this appeal counts towards the allowable number of appeals in the period in which it is filed.

**PRIMARY APPELLANT**                                      WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Assignment: | Unit/Cell # | Signature | Date |
|---|---|---|---|---|---|
| Ornelas, Jorge | P-37370 | N/A | F 65C 22-5u | | 12-2-11 |

**A.** Summarize the specific issue that you are appealing as identified in the attached CDCR 602: Violation of Southern hispanics Eight and Fourteenth Amendment By orchestrating gladiator style fights and continuing a program in Fu fuc financial gain by prison officials and administration as of November 9 2011

**B.** Summarize the action requested: Re house southern hispanics to A1 and E5 yard 2) Re-instate privileges taken as of November 9. 2011 untill completion of rehousing of southern hispanics to A1 and E5 yard. 3) No reprisals against any inmate involved in appeal

**NOTE:** I, the undersigned, agree that the facts presented in this appeal are true. I agree with the issue presented and I am requesting the action indicated. In the event the Primary Appellant transfers or elects to withdraw from the appeal, I understand that I may become the primary appellant for purposes of processing the group appeal.

| CDC Number | Name | Assignment | Unit/Cell # | Signature | Date |
|---|---|---|---|---|---|
| F.07922 | Carreon Miguel | NA | GSO-16-4 | | 11-2-11 |
| AN1819 | Sisneros Phillip | N-1A | F65D 23-3L | | 12-2-11 |
| G-24051 | Morfin, Rogelio | N/A | 650-234 | | 12-2-11 |
| V68732 | Quiz, Alejandro | N/A | 650-5p | | 12.2.11 |
| AH-3386 | Hernandez Emanuel | N/A | L50/22 | | 12.2.11 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

INMATE APPEALS BRANCH

JAN 25 2012

RECEIVED

Affidavit

Albert DeLeon states:

On November 7-2011 Ralyn Conner came and interview me regarding phone calls that she received from my family members concerning the reckless policy that are being created by prison officials and administration. In that interview I asked Ralyn Connor; (why was a memorandum put out taking disciplinary actions before any incident had taken place?) Ralyn Conner simply stated; (what does history Tell us,? IT repeats itself!) Taking into concideration that inmates where going to get injured and no preventitive mesures where going To be taken.

I Albert DeLeon CDCR# C.63149 declare under the penalty of penjury under the law of the state of California that the foregoing is true and correct.

Date 11-25-2011

Albert DeLeon

Albert De Leon C-63149

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

Case 1:12-cv-00709-AWI-MJS   Document 1   Filed 04/06/12   Page 52 of 57

RE: Screening at the FIRST Level

*November 28, 2011*

*ORNELAS, P37370*
*F 650 2022005UP*

PROGRAM, Modified/Lockdown Programs, 11/28/2011
Log Number: ASP-M-09-01504
(Note: Log numbers are not assigned to screen out appeals)

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(2). The appeal duplicates a previous appeal upon which a decision has been rendered or is pending.*

N. Lopez / Correctional Counselor II
Appeals Coordinator
Avenal State Prison

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | | |
| | *FOR STAFF USE ONLY* | | |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available.  See California Code of Regulations, Title 15, Section (CCR) 3084.1.  You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal.  If additional space is needed, only one CDCR Form 602-A will be accepted.  Refer to CCR 3084 for further guidance with the appeal process.  No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Ornelas  Jorge | P-37370 | 650-22-5ᵘᵖ | N/A |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.): Violation of Southern
Hispanics Eighth and Fourteenth Amendment by FG yard officials & administrat

**RECEIVED**
**NOV 28 2011**
**ASP APPEALS OFFICE**

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): This grievance is
being filed on behalf of FGGP southern hispanics in A.S.P, T.I.H.P. 15 section
3084.2 (F).1) violation of southern hispanics Eight Amendment rights
by FG administration through orchestrating gladiator style fights.

B. Action requested (If you need more space, use Section B of the CDCR 602-A): That southern hispanics
in FG facility be removed from FG yard and be re-housed to A1 and FG yard.
general population in a timely fashion, it has been 3 yrs and 10 months depriving
rehabilitative needs, to southern hispanics. 2) That all privileges taken from

Supporting Documents: Refer to CCR 3084.3.

☒ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):
Affidavit from inmate:
Albert De Leon # C-63149

☐ No, I have not attached any supporting documents.  Reason :_____

Inmate/Parolee Signature: _J.A.Ornelas_          Date Submitted: _11-25-2011_

☐ By placing my initials in this box, I waive my right to receive an interview.

**C. First Level - Staff Use Only**                Staff – Check One: Is CDCR 602-A Attached?  ☐ Yes   ☐ No

This appeal has been:
☐ Bypassed at the First Level of Review.  Go to Section E.
☐ Rejected (See attached letter for instruction)  Date: _____  Date: _____  Date: _____
☒ Cancelled (See attached letter) Date: _11/28/11_
☐ Accepted at the First Level of Review.

Assigned to: _____  Title: _____  Date Assigned: _____  Date Due: _____

First Level Responder: Complete a First Level response.  Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _____  Interview Location: _____

Your appeal issue is:  ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____

See attached letter.  If dissatisfied with First Level response, complete Section D.

Interviewer: _____ (Print Name)   Title: _____   Signature: _____   Date completed: _____

Reviewer: _____ (Print Name)   Title: _____   Signature: _____

Date received by AC: _____

| | AC Use Only |
|---|---|
| | Date mailed/delivered to appellant ___ / ___ / ___ |

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)
Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | | |
| | **FOR STAFF USE ONLY** | | |

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): Ornelas, Jorge | CDC Number: P-37370 | Unit/Cell Number: 650-22-54P | Assignment: N/A |
|---|---|---|---|

A. Continuation of CDCR 602, Section A only (Explain your issue): 2) violating the fourteenth Amendment by discriminating southern hispanics rights imposing arbitrary Policies and disciplinary actions. On October 29, 2011 all southern Hispanics were ordered to the podium by c/o Robles and SGT.Riddle to sign a general Chrono stating; Refusing to sign will result in disciplinary action. Subjecting southern a catch-22, a practice which makes one a victim of its own provisions or neither the cause. On November 7, 2011 Mr. Salyn Conner of OMBUDSMAN came and interviewed inmate Albert De Leon #C63149 Concerning the integration of Southern hispanics and Fresno Bulldogs, (see supporting documents) On November 8, 2011 Fb prison officials executed the integration of 4 southern hispanics and 4 Fresno Bulldogs in building E630 violation of the Inmate Housing Policy (IHP) (see title 15 section 3269 1 and 3269.1 (a)(4)) On November 9 2011 an incident occured between 4 southern hispanics and 4 Fresno bulldogs. The 4 southern hispanic were forced into ad-seg while the 4 Fresno bulldogs where sent back into E630 to program. On this same day non-participating southern hispanics were punished losing all privileges. This is clearly a violation of federal guaranteed rights, therefore, bringing a class action law suit under title 42 of the U.S code, section 1983, against F6 prison officials and administration

Inmate/Parolee Signature: J.A. Ornelas          Date Submitted: 11-25-2011

B. Continuation of CDCR 602, Section B only (Action requested): Southern hispanics housed in E650 be re-instated such as; Contact visits, packages, canteen, education vocation PIA, law library ect. Until the completion of rehousing of southern hispanics to A1 and E5 Facility. 3) Any continuance of Federal guaranteed rights violation will result in further civil liabilities. 4) No reprisals shall be taken against any inmate involved in this group appeal 5) To cease all disciplinary actions against the 4 southern hispanics involved in the orchestrated fights by prison officials on November 9 2011 incident. Inmates:
    1) Anthony Bray # E-21271
    2) Vincent Alvarez # K54223
    3) Lionel E Guzman # P44524
    4) Mario Gonzalez # F-94826

Inmate/Parolee Signature: J.A. Ornelas          Date Submitted: 11-25-2011

| C.D.C.R NUMBER | PRINT FULL NAME | SIGNATURE |
|---|---|---|
| 67340 | RICKY. ANTHONY. LOPEZ | |
| -37370 | Jorge Alberto · Ornelas | |
| T·83069 | Manuel Solorio | Manuel Solorio |
| J-77468 | JUAN. RAMIREZ | Juan. Ramirez |
| J-69451 | Gustavo LOPEZ | Gustavo Lopez |
| G5130 | Taylor W. DUNIVAN | Taylor W. Dunivan |
| 42203 | Alvarez Ricardo | Alvarez R |
| D.6819 | Phillip Sisneros | |
| H5385 | CRAIG D. HILBUN | Craig D Hilbun |
| T-95927 | CORDERO, ROJELIO | Cordero Rofel. |
| T363417 | GILBERT BRIONES | Gilbt Briones |
| J-08610 | MICHAEL WHEELER | MW |
| J-38040 | CARLOS GOMEZ | C |
| E.LL263 | ALBERTO GONZALEZ | Albert Gnzdz |
| J.68732 | Alejandro Ruiz | CU R |
| J-90589 | Miguel Escalera | Migel Esclo |
| F-62631 | Jose Valdez | Joe Valdes |
| AH-328M | miguel Andrade | andrade miguel |
| G00371 | JOHN CASTRO | Jdn Cestu |
| K59811 | Manuel Morales | Manuel Morales |
| K99331 | JOSE GARCIA | |
| H·73372 | Martinez Juan | Juan Martinez |
| E·27252 | Avila Alfredo | aurele |
| AE5652 | SANchez DAvid | David Sanchez |

| C.D.C.R NUMBER | PRINT FULL NAME | SIGNATURE |
|---|---|---|
| F.07922 | Carreon, Miguel | |
| F-94826 | Gonzalez, Mario | |
| P-18106 | Osorio, Nicholas | |
| 4F-1248 | Velasco, Reyes.o | |
| f37902 | Danny Villanueva | |
| 100682 | David Villarreal | |
| J31234 | FRANCISCO ROMERO | |
| L-64651 | SERGIO GALVAN | |
| P5-7722 | Joseph Fanciber. | |
| 270875 | GREG CESEÑA | |
| P-41232 | Richard Jimenez | |
| C-86891 | Jesse Cantu | |
| V-49080 | RUIZ ELEAZAR | |
| 4H8875 | DAVID VASQUEZ | |
| AG154 | CULBERTSON, ERNIE | |
| AC3348 | SANDOVAL JUAN L. | |
| K-87502 | William Lucero | |
| AC-9138 | URIAS, RUDY | |
| C-63149 | Albert. DeLeon | |
| E-28771 | RICHARD LOYA | |
| AD2059 | Emilio Robles | |
| P-17786 | BARRIOS | |
| F-40171 | Arthur Reyes | |
| D-84206 | Arzaga | |

| C.D.C.R NUMBER | PRINT FULL NAME | SIGNATURE |
|---|---|---|
| J73835 | ENRIQUE DUARTE | |
| E22372 | TONY ALEGRIA | |